DOYLE BROWN AND COLEEN B. BROWN v. LUMBERMENS MUTUAL CASUALTY COMPANY AND GENERAL MOTORS CORPORATION

No. 337PA88

(Filed 5 April 1990)

1. **Insurance § 100 (NCI3d)— insurer's duty to defend**

There is no statutory requirement that an insurance company provide its insured with a defense, but a company may provide by contract that it will defend its insured.

**Am Jur 2d, Automobile Insurance §§ 389, 390.**

2. **Insurance § 100 (NCI3d)— insurer's duty to defend**

An insurer's duty to defend suits against its insured is determined by the language in the insurance contract and is broader than its obligation to pay damages under a particular policy.

**Am Jur 2d, Automobile Insurance §§ 389, 390.**

BROWN v. LUMBERMENS MUT. CASUALTY CO.

[326 N.C. 387 (1990)]

### 3. Insurance § 6 (NCI3d)— insurance policy as contract

An insurance policy is a contract and, unless overridden by statute, its provisions govern the rights and duties of the parties thereto.

**Am Jur 2d, Automobile Insurance § 1.**

### 4. Insurance § 6.2 (NCI3d)— ambiguous policy language— construction in favor of insured

Any ambiguity in the policy language must be resolved against the insurance company and in favor of the insured, and a difference of judicial opinion regarding proper construction of policy language is some evidence calling for application of this rule.

**Am Jur 2d, Automobile Insurance § 3.**

### 5. Insurance § 100 (NCI3d)— automobile liability insurance— payment of policy limits to injured claimant—duty to defend

Where a duty to defend provision in an automobile liability policy requires the insurer to "settle or defend" covered claims against the insured, requires the insurer to bear defense costs in addition to paying liability limits, and provides that the insurer's duty to settle or defend ends when its limit of liability for this coverage has been exhausted, the duty to defend provision is ambiguous as to the manner by which the coverage must be exhausted before the duty to defend terminates and must be interpreted favorably to the insured. So interpreted, it means that the insurer's duty to defend continues until its coverage limits have been exhausted in the settlement of a claim or claims against the insured or until judgment against the insured is reached. Therefore, an insurer's duty to defend did not end when it paid its policy limit to the injured claimant pursuant to N.C.G.S. § 1-540.3.

**Am Jur 2d, Automobile Insurance §§ 389, 390.**

Justice WHICHARD dissenting.

Justices MEYER and WEBB join in this dissenting opinion.

ON discretionary review of a decision of the Court of Appeals, reported at 90 N.C. App. 464, 369 S.E.2d 367 (1988), affirming in part and reversing in part judgments entered by *DeRamus, J.,*

BROWN v. LUMBERMENS MUT. CASUALTY CO.

[326 N.C. 387 (1990)]

at the 5 March 1987 session of Superior Court, DAVIE County. Heard in the Supreme Court 11 April 1989.

*Franklin Smith for plaintiff-appellee.*

*Parker, Poe, Thompson, Bernstein, Gage & Preston, by Irvin W. Hankins III, for defendant-appellant Lumbermens Mutual Casualty Company.*

EXUM, Chief Justice.

This is an action seeking in part damages against Lumbermens Mutual Casualty Company (Lumbermens) for an alleged breach of a "duty to defend" provision in an automobile liability policy issued by Lumbermens. The trial court entered summary judgment for Lumbermens on the ground that it had discharged its duty to defend when it paid its entire coverage limits to one of the claimants allegedly injured by the negligence of its insureds, the plaintiffs.[1] The Court of Appeals reversed and remanded. We affirm the decision of the Court of Appeals.

On 20 June 1983 plaintiff Doyle Brown purchased a general liability automobile insurance policy from Lumbermens. The policy period was 20 June to 20 December 1983. Coverage under the policy was limited to $25,000 per person and $50,000 per accident. Both plaintiffs were insured as operators of Mr. Brown's 1979 Cadillac. The policy contained this provision:

> We will pay damages for bodily injury or property damage for which any **covered person** becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.

On 14 October 1983 plaintiff Coleen Brown was driving the Cadillac when it collided with a car driven by Joan Hinson. Hinson and Nora Shore, a passenger in Hinson's car, were injured. On

1. The Browns' action also seeks damages against General Motors, the maker of plaintiffs' automobile involved, for various acts of alleged wrongdoing. The trial court granted General Motors' motion to dismiss the claims against it. The Court of Appeals affirmed in part and reversed in part this ruling. This aspect of the case is not before us.

28 March 1984 Hinson filed suit against the Browns for her injuries.[2]

Pursuant to the insurance contract, Lumbermens employed counsel to defend Hinson's suit against the Browns. On 1 June 1984 counsel filed answer on behalf of the Browns. In a 3 December 1986 affidavit, counsel gave his opinion that the Browns probably would be found liable and he predicted a jury verdict between $50,000 and $75,000. On 19 August 1984 Lumbermens filed an offer of judgment in the amount of its $25,000 coverage limit. Hinson rejected the offer, saying she would accept $43,000 to settle the claim. Lumbermens then determined to pay its policy limit of $25,000 to Hinson in partial satisfaction of Hinson's claim, and on 4 January 1985 it informed the Browns of its decision. The Browns objected and refused to contribute to the settlement of Hinson's claim. On 7 January 1985 Lumbermens paid $25,000 to Hinson pursuant to N.C.G.S. § 1-540.3 and an "Advance Payment Agreement" in which Hinson released Lumbermens from all claims arising out of the automobile collision and reserved her right to pursue her claim against the Browns.[3]

After paying its policy limit to Hinson, Lumbermens stopped defending the Browns and discharged counsel which it had employed for this purpose. The trial court granted counsel's motion to withdraw on 14 January 1985. The Browns did not then employ new counsel.

Hinson's claim against the then unrepresented Browns came on for trial in April 1985. On 1 May 1985 Hinson obtained a verdict against the Browns in the amount of $45,000. The trial court entered judgment on the verdict but credited the judgment with the $25,000 Lumbermens had paid Hinson. The Browns then obtained counsel and appealed. The Court of Appeals found no error. *Hinson v. Brown*, 80 N.C. App. 661, 343 S.E.2d 284 (1986), *disc. rev. denied*, 318 N.C. 282, 348 S.E.2d 138 (1986).

---

2. Shore also filed an action against plaintiffs for the injuries she sustained in the accident. The Browns brought Lumbermens into that suit as a third-party defendant. In *Shore v. Brown*, 324 N.C. 427, 378 S.E.2d 778 (1989), we held that the third-party claim there abated because of the pendency of this action.

3. N.C.G.S. § 1-540.3 governs the treatment of "advance or partial" payment(s) to claimants in personal injury or wrongful death claims vis-a-vis admissions of liability on the part of the payor, release of the payor from further liability, and the crediting of the advance payment on any judgment later rendered against the payor.

BROWN v. LUMBERMENS MUT. CASUALTY CO.

[326 N.C. 387 (1990)]

The Browns, thereafter, filed this action, alleging that Lumbermens breached its insurance contract by failing properly to defend them and that it negligently failed to investigate the design, construction and assembly of the brake system on the 1979 Cadillac.[4] At the hearing on Lumbermens' motion for summary judgment Lumbermens contended that by paying its entire coverage to Hinson it had discharged its duty to defend the Browns under the duty to defend provision of its insurance contract. The trial court agreed with this contention and entered summary judgment for Lumbermens.

The Court of Appeals disagreed, reversed the ruling and remanded the case. The Court of Appeals concluded that the duty to defend provision in Lumbermens' policy was ambiguous in that it failed to specify in what manner Lumbermens' coverage limits would have to be "exhausted" before its duty to defend was discharged. The Court of Appeals concluded the substantive portion of its opinion on this issue by saying, "[G]iven the unnecessarily ambiguous use of the word 'exhaust' in this . . . policy, we adopt plaintiffs' interpretation which requires [Lumbermens] to continue defending the Browns until a settlement or judgment is reached despite having paid its policy limits under Section 1-540.3." *Brown v. Lumbermens Mut. Casualty Co.*, 90 N.C. App. at 475-76, 369 S.E.2d at 374.

We allowed Lumbermens' petition for discretionary review, limited to the question of whether the Court of Appeals erred in concluding that the company had not discharged its duty to defend and in reversing summary judgment in its favor. Concluding that the Court of Appeals did not err, we affirm.

[1, 2] There is no statutory requirement that an insurance company provide its insured with a defense. *See* N.C.G.S. § 20-279.21 (1983 & Cum. Supp. 1988) (stating requirements of a "motor vehicle liability policy"). However, a company may provide by contract that it will defend its insured. *Carrousel Concessions v. Florida Ins. Guar.*, 483 So. 2d 513, 516 (Fla. Dist. Ct. App. 1986); *Schiebout v. Citizens Insur. Co. of America*, 140 Mich. App. 804, 813, 366

---

4. As we understand the briefs and record, the Browns contended in Hinson's claim against them that the Cadillac's brake system was defective and this defect rather than any negligence on the part of Ms. Brown caused the collision. Apparently, too, this allegation forms part of the basis of the Browns' claim against General Motors.

N.W.2d 45, 49 (1985); *see also Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 691, 340 S.E.2d 374, 377, *reh'g denied*, 316 N.C. 386, 346 S.E.2d 134 (1986) (extent of duty to defend requires resolution of scope of policy provisions). An insurer's duty to defend suits against its insured is determined by the language in the insurance contract, *Liberty Mutual Insurance Co. v. Mead Corporation*, 219 Ga. 6, 8, 131 S.E.2d 534, 535 (1963); *Gross v. Lloyd's of London Ins. Co.*, 121 Wis. 2d 78, 87, 358 N.W.2d 266, 270 (1984), and is broader than its obligation to pay damages under a particular policy. *Waste Management of Carolinas, Inc.*, 315 N.C. at 691, 340 S.E.2d at 377.

[3] An insurance policy is a contract and, unless overridden by statute, its provisions govern the rights and duties of the parties thereto. *Fidelity Bankers Life Ins. Co. v. Dortch*, 318 N.C. 378, 380, 348 S.E.2d 794, 796 (1986). "As with all contracts, the goal of construction is to arrive at the intent of the parties when the policy was issued." *Woods v. Insurance Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978). In construing an insurance policy, "nontechnical words, not defined in the policy, are to be given the same meaning they usually receive in ordinary speech, unless the context requires otherwise." *Grant v. Insurance Co.*, 295 N.C. 39, 42, 243 S.E.2d 894, 897 (1978); *see also Davis v. Maryland Casualty Co.*, 76 N.C. App. 102, 104, 331 S.E.2d 744, 746 (1985).

[4] Any ambiguity in the policy language must be resolved against the insurance company and in favor of the insured. *Woods*, 295 N.C. at 506, 246 S.E.2d at 777. A difference of judicial opinion regarding proper construction of policy language is some evidence calling for application of this rule. *See Maddox v. Insurance Co.*, 303 N.C. 648, 654, 280 S.E.2d 907, 910 (1981); *Electric Co. v. Insurance Co.*, 229 N.C. 518, 521, 50 S.E.2d 295, 297 (1948); Annot., "Insurance — Ambiguity — Split Court Opinions," 4 A.L.R. 4th 1253, 1255 (1981). While "[t]he fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is at best, ambiguous," *St. Paul Fire & Marine Ins. Co. v. Freeman-White Assoc., Inc.*, 322 N.C. 77, 83, 366 S.E.2d 480, 484 (1988); *accord Mazza v. Medical Mut. Ins. Co.*, 311 N.C. 621, 630, 319 S.E.2d 217, 223 (1984), "ambiguity . . . is not established by the mere fact that the plaintiff makes a claim based upon a construction of its language which the company asserts is not its meaning." *Trust Co. v. Insurance Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970).

"All parts of a contract are to be given effect if possible. It is presumed that each part of the contract means something." *Bolton Corp. v. T.A. Loving Co.*, 317 N.C. 623, 628, 347 S.E.2d 369, 372 (1986). *See also Williams v. Insurance Co.*, 269 N.C. 235, 240, 152 S.E.2d 102, 107 (1967) ("each clause and word must be . . . given effect if possible by any reasonable construction"); *Robbins v. Trading Post*, 253 N.C. 474, 477, 117 S.E.2d 438, 440-41 (1960).

> The terms of a contract must, if possible, be construed to mean something, rather than nothing at all, and where it is possible to do so by a construction in accordance with the fair intendment of a contract, the tendency of the courts is to give it life, virility, and effect, rather than to nullify or destroy it.

17 Am. Jur. 2d *Contracts* § 254, at 648-49 (1964).

[5] With these principles in mind we conclude that there is ambiguity in the Lumbermens policy's duty to defend provision and this ambiguity must be construed favorably to the insured and that the Court of Appeals correctly reversed the trial court. The relevant policy provision states in part:

> We will pay damages for bodily injury or property damage for which any **covered person** becomes legally responsible because of an auto accident. *We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.*

(Emphasis added.) To "exhaust" means "to use up the whole supply or store of." Webster's Third New International Dictionary 796 (1971). Lumbermens would have us concentrate on the word "exhaust" and conclude that its payment of liability limits to Hinson terminated its obligation to defend under the policy because the limits were "used up." However, we cannot divorce the last sentence in the provision from its context. We must consider the entire provision dealing with the insurer's duty to defend and base our decision on the whole. "The various terms of the policy are to be harmoniously construed, and if possible, every word . . . is to be given effect." *Woods*, 295 N.C. at 506, 246 S.E.2d at 777. The second sentence in the provision requires the insurer to "settle

or defend" covered claims against its insured. The third sentence requires the insurer to bear defense costs in addition to paying liability limits, indicating that the duties to pay claims and to defend are separate and independent.

When the final sentence regarding exhaustion of coverage limits and termination of the duty to settle or defend is read together with the prior sentences, the entire provision's ambiguity becomes apparent. As the plaintiffs argue and the Court of Appeals correctly recognized, the insurer could "exhaust" its coverage limits in any number of ways. It could pay them into court and interplead conflicting claimants in a declaratory judgment action. It could pay them to one of several claimants in return for a complete settlement of that claim against its insured. It could pay them in full or partial satisfaction of a judgment against its insured. It could advance the sum to its insured in lieu of investigating whatever defenses might be available. It could, as was done here, pay them to the injured party, in return for a release only of the insurer and not the insured. Other methods of exhausting coverage limits are possible.

The ambiguity in the questioned provision thus lies not in the meaning of the word "exhausted." It lies in the manner by which the coverage must be exhausted before the duty to defend terminates. The insurer under this provision first assumes a duty to "settle or defend" any covered claim. This duty ends only when its coverage limits are exhausted. The question is whether, considering both propositions, exhaustion of the coverage limits must be by way of settlement or judgment before the duty to defend ends, or whether simply exhausting the limits in *any* manner terminates the duty. Both interpretations are possible. Plaintiff argues for the first; defendant, for the second.

Given the ambiguity, the provision relating to the insurer's duty to defend must be interpreted favorably to the insured. So interpreted, it means that the insurer's duty to defend continues until its coverage limits have been exhausted in the settlement of a claim or claims against the insured or until judgment against the insured is reached.

Our interpretation of the duty to defend provision is supported by cases from other jurisdictions which have considered insurance

## BROWN v. LUMBERMENS MUT. CASUALTY CO.

[326 N.C. 387 (1990)]

contracts with language essentially identical to the language here.[5] *Stanley v. Cobb*, 624 F. Supp. 536, 537 (E.D. Tenn. 1986) ("this Court is of the opinion that the limit of liability may not be exhausted in a manner other than that specified by the policy, *i.e.*, to either settle or defend"); *Samply v. Integrity Ins. Co.*, 476 So. 2d 79, 83 (Ala. 1985) ("we hold that the better rule of law is that an insurer, when it obligates itself to defend, . . . cannot avoid its duty to defend against an insured's contingent liability by tendering the amount of its policy limits into court without effectuating a settlement or obtaining the consent of the insured"); *Anderson v. U.S. Fidelity & Guar. Co.*, 177 Ga. App. 520, 521, 339 S.E.2d 660, 661 (1986) ("[w]e do not agree . . . that the term 'exhaust' encompasses the paying into court of the policy limits, but interpret that term to mean the payment either of a settlement or of a judgment wholly depleting the policy amount"). *Anderson* reaches its result after concluding the provision is not ambiguous but clearly requires exhaustion of limits in the payment of a settlement or judgment. *Id. Stanley* finds ambiguity which it resolves favorably to the insured. *Stanley*, 624 F. Supp. at 538. *Samply* fails to mention the ambiguity issue but nevertheless construes the provision in favor of the insured. *Samply*, 476 So. 2d at 83-84.

It is true that in each of the above cases the insurer tendered its policy limits into court and awaited determination of liability, *Stanley*, 624 F. Supp. at 537; *Samply*, 476 So. 2d at 81; *Anderson*, 177 Ga. App. at 520, 339 S.E.2d at 660, while here defendant paid its policy limit directly to the claimant in return for a release of the insurer. This, we believe, is a distinction without material difference. The result under both procedures, vis-a-vis the insured,

---

5. The Court of Appeals correctly recognized that over the years the insurance industry "has moved towards contractually limiting its duty to defend its insureds." *Brown v. Lumbermens Mut. Casualty Co.*, 90 N.C. App. at 477, 369 S.E.2d at 374. Before 1966 standard liability policies did not include provisions terminating the insurer's obligation to defend upon "exhaustion" of coverage limits. *Pareti v. Sentry Indem. Co.*, 536 So. 2d 417 (La. 1988); Zulkey & Pollard, *The Duty to Defend After Exhaustion of Policy Limits*, For The Defense, 21, 22 (June 1985). Since 1966 standard liability policies have included this provision: "[T]he company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements." Van Vugt, *Termination of the Insurer's Duty to Defend By Exhaustion of Policy Limits*, 44 Ins. Couns. J. 254, 257 (1977). More recently standard liability policies have contained the language now before us; and only a few cases have interpreted this language. Those we have found are discussed in the text.

is the same. The claim against the insured remains outstanding, because there has been neither a judgment nor settlement disposing of that claim.

*Pareti v. Sentry Indem. Co.*, 536 So. 2d 417 (La. 1988), also supports our decision. In *Pareti* the policy limits were paid to effect a formal settlement of one among several claims, which resulted in a complete release of both the insured and the insurer by that claimant and which was agreed to by the insured. *Pareti*, 536 So. 2d at 419. Under these circumstances the court held the insurer had no duty to defend the other claims. *Id.* at 424. It also held that the language as applied to these circumstances was not ambiguous. *Id.* at 420-21. It said,

> [r]ead as a whole, the only reasonable interpretation of this section is that the insurer will defend any claim, *but* the defense obligation will terminate if and when the insurer's policy limits are exhausted. These provisions are not subject to more than one reasonable interpretation. The policy in this regard is not ambiguous.

*Id.* at 421. Importantly, the *Pareti* Court distinguished from the circumstances before it,

> the numerous cases which hold that the insurer cannot discharge its defense duties by unilaterally tendering its policy limits to the court, the claimant, or the insured. When an insurer merely tenders its limits without obtaining a settlement of any claim for its insured, a strong argument can be made that it has neither "exhausted" its policy limits nor fulfilled its fiduciary duty to discharge its policy obligations to the insured in good faith.

*Id.* at 422-23 (footnote omitted). The *Pareti* Court also recognized,

> [i]f an effort were made to construe the policy clause at issue here to cover the situation where there is a tender of policy limits, arguably it would be ambiguous in that context . . . . [U]nilateral tenders by the insurer have generally been viewed as insufficient to terminate the duty to defend.

*Id.* at 421, n.3. We agree with the result and the reasoning in *Pareti*.

Finally, as one court has noted: "[A] most significant protection afforded by the policy—that of defense—is rendered a near nullity" if the duty to defend terminates upon unilateral tender of the

**BROWN v. LUMBERMENS MUT. CASUALTY CO.**

[326 N.C. 387 (1990)]

policy limits. *Simmonds v. Jeffords*, 260 F. Supp. 641, 642 (E.D. Pa. 1966).

We conclude, for the reasons given, that under the terms of the policy in question Lumbermens' unilateral tender to, and Hinson's acceptance of, the policy limit without effecting settlement of Hinson's claim against the Browns did not relieve Lumbermens of its duty to defend against this claim. The decision of the Court of Appeals is, therefore,

Affirmed.

Justice WHICHARD dissenting.

I agree that there is no ambiguity in the meaning of the word "exhausted," but I do not agree that a latent ambiguity lurks in the "manner by which the coverage must be exhausted before the duty to defend terminates." The more reasonable reading of this policy language is a contextual one, such as that given an identical provision by the Supreme Court of Louisiana:

Read as a whole, the only reasonable interpretation of this section is that the insurer will defend any claim, *but* the defense obligation will terminate if and when the insurer's policy limits are exhausted. These provisions are not subject to more than one reasonable interpretation. The policy in this regard is not ambiguous.

. . . .

This standard policy provision ["In addition to our limit of liability, we will pay all defense costs we incur"] simply means that defense costs will be paid separately by the insurer and will not be applied against its policy limits. . . . This language cannot be taken to mean that the company will *continue* to pay defense costs once its policy limits have been exhausted, and in fact the very next sentence of the policy expressly states that this will not be the case. Once again, these sentences must be construed together, and when they are so construed there is no ambiguity.

*Pareti v. Sentry Indem. Co.*, 536 So. 2d 417, 421 (La. 1988). *See also Stanley v. Cobb*, 624 F. Supp. 536, 538 (E.D. Tenn. 1986) (absent provision that insurer may pay the insured the policy limits *or* defend to judgment, policy language identical to that here must

**BROWN v. LUMBERMENS MUT. CASUALTY CO.**

[326 N.C. 387 (1990)]

be interpreted by its plain meaning and any ambiguity must be resolved against the contract's drafter); *Anderson v. U.S. Fidelity & Guar. Co.*, 339 S.E.2d 660, 661 (Ga. App. 1986).

I would hold that defendant's unilateral tender of the policy limit to Hinson, and Hinson's acceptance, sufficed to exhaust defendant's "limit of liability" and thus to end its duty to defend plaintiff. I would do so because, in the context presented, neither the word "exhausted" nor the manner of "exhausting" the policy limits is ambiguous: the only reasonable interpretation is that by paying its full policy limits to the party injured by its insured, defendant "exhausted" its limit of liability and ended its duty to settle or defend.

The double meaning that the majority perceives in the policy language—that the duty to defend or settle ends only after judgment or settlement or that it ends when the policy limits are exhausted in any other manner—and its interpretation that the former, which favors the insured, controls, in effect reinserts policy language into the contract that was standard in post-1966 insurance contracts, but is omitted from the policy here:

> [T]he company shall not be obligated to pay any claim or judgment or to defend any suit or prosecute or maintain any appeal after the applicable limits of the Company's liability have been exhausted *by payment of any judgments or settlements*.

*E.g., Conway v. Country Cas. Ins. Co.*, 92 Ill. 2d 388, 393, 442 N.E.2d 245, 247 (1982) (emphasis added).

In *Conway*, the company, after making several advance payments to the plaintiff for her medical expenses, entered into an agreement, with the approval of its insured, to pay the remainder of the $10,000 limit. *Conway*, 92 Ill. 2d at 391-92, 442 N.E.2d at 246. The agreement, however, did not release the insured, against whom the plaintiff continued her action. *Id.* at 392, 442 N.E.2d at 246. The Illinois Supreme Court held that the company was not discharged of its duty to defend. It stated:

> Our holding that an insurer cannot discharge its duty to its insured simply by making payments to the claimant to the extent of its policy's limits is clearly supported by the language of the policy here. As we have noted above, the policy provided that the insurer could terminate its obligation to defend and pay by payments to the policy's limits of "any judgments or

settlements." The insurer here, of course, made no payment pursuant to a judgment or a settlement agreement.

*Id.* at 395-96, 442 N.E.2d at 248. Thus, in *Conway* the inclusion of the language that exhaustion of the policy limit must be by payment of "judgments or settlements" was crucial to the court's determination that the company's payments to the claimant did not discharge its duty to defend.

Policy language in *Gross v. Lloyd's of London Ins. Co.*, 121 Wis. 2d 78, 83, 358 N.W.2d 266, 269 (1984), was identical to that in *Conway*, with the appended phrase that exhaustion of policy limits could be either by payment of judgments or settlements "or after such limit of the Company's liability has been tendered for settlement." The trial court allowed the company to pay its policy limit into court and thereby be relieved of its duty to defend its insured. *Id.* at 83, 358 N.W.2d at 269. The court of appeals affirmed, but the Wisconsin Supreme Court reversed, stating that the "tendered for settlement" language contemplated payment prior to judgment or settlement, that the addition of that language was evidence of a "substantial change" in the insurer's obligation to defend, and that the insurer improperly failed to highlight the new language in the policy so as to give notice to the insureds of a change in the insurer's duty to defend. *Id.* at 86, 89, 358 N.W.2d at 270, 271.

The language specifying means of exhaustion of policy limits is patently absent in the contract at issue here. Although an insurer's duty to defend suits against its insured must be determined on the basis of the language in the insurance contract, *Liberty Mutual Insurance Co. v. Mean Corporation*, 219 Ga. 6, 8, 131 S.E.2d 534, 535 (1963), the majority reads more into the contract than is there: the contract neither states nor implies a provision limiting "exhaustion" of policy liability limits to settlement or judgment, or even to a tender "for settlement." *See Gross v. Lloyd's of London Ins. Co.*, 121 Wis. 2d at 83, 358 N.W.2d at 269. Indeed, the absence of such limiting language, which underlay the courts' holdings in *Conway* and *Gross*, suggests that defendant's drafters may well have avoided it for the reasons therein expressed.

It is well established that "[a]ll parts of a contract are to be given effect if possible. It is presumed that each part of the contract means something." *Bolton Corp. v. T.A. Loving Co.*, 317 N.C. 623, 628, 347 S.E.2d 369, 372 (1986). *See also Williams v.*

*Insurance Co.*, 269 N.C. 235, 240, 152 S.E.2d 102, 107 (1967) ("each clause and word must be . . . given effect if possible by any reasonable construction"); *Robbins v. Trading Post*, 253 N.C. 474, 477, 117 S.E.2d 438, 440-41 (1960).

> The terms of a contract must, if possible, be construed to mean something, rather than nothing at all, and where it is possible to do so by a construction in accordance with the fair intendment of a contract, the tendency of the courts is to give it life, virility, and effect, rather than to nullify or destroy it.

17 Am. Jur. 2d *Contracts* § 254 at 648-49 (1964). The majority would interpret the provision in question to mean "that the insurer's duty to defend continues until its coverage limits have been exhausted in the settlement of a claim or claims against the insured or until judgment against the insured is reached." Where a settlement or judgment has been reached in the factual context presented here, no claim against the insured remains. The duty of the insurer to defend thus terminates inevitably, and contractual provision therefor is unnecessary. To interpret the provision as the majority does thus renders it meaningless surplusage, without purposeful effect. Under the interpretation here—that unilateral payment of the policy limit to the injured party presettlement or prejudgment effects an exhaustion of the insured's liability limits and a termination of the insurer's duty to settle or defend—the provision "mean[s] something, rather than nothing at all"; it has "effect, rather than [being] nullif[ied] or destroy[ed]." *Id.*

The majority briefly surveys the handful of cases—*Stanley v. Cobb*, 624 F. Supp. 536; *Samply v. Integrity Ins. Co.*, 476 So. 2d 79 (Ala. 1985); *Anderson v. U.S. Fidelity & Guar. Co.*, 177 Ga. App. 520, 339 S.E.2d 660 (1986); and *Pareti v. Sentry Indem. Co.*, 536 So. 2d 417—in which state and federal courts have construed policy language identical to that before us. In each of these cases the insurer's assertion that tender of the policy limits terminated its duty to defend the insured was rejected. The majority acknowledges that these cases are factually distinguishable, but denies the materiality of the difference. I disagree.

In *Stanley*, *Samply* and *Anderson*, the insurance companies tendered the policy limits into court, then awaited determination of liability. *Pareti* involved a compromise and release agreement between the claimants, the insured, and the insured's insurance

## BROWN v. LUMBERMENS MUT. CASUALTY CO.

[326 N.C. 387 (1990)]

company. The agreement released the insured and the insurance company from further liability. In return, the insurance company tendered $50,000 in settlement. The claimants' underinsured carrier argued that the insurance company did not exhaust its duty to defend. The court held that because the insurer had exhausted its policy limits through a good faith settlement, it no longer had a duty to defend. The court only suggested in a footnote that a "unilateral tender" of the policy limits might not exhaust the duty to defend, citing *Samply* and cases on point cited therein, which are factually distinguishable from this case because they involve tender of policy limit amounts into a court and/or because they involve different language.[1]

Here the company paid its policy limit directly to the claimant. The injured claimant thus benefitted—immediately and maximally—from the payment. When an insurer merely tenders its policy limits into court, the insured may or may not be found liable for the claimant's injuries. If the insured is found not liable, the insurer recovers the entire sum tendered. Given that possibility, the insurer may not have "exhausted" its "limit of liability" when it merely tenders its limits into court. By contrast, when an insurer has paid to the claimant all it can be required to pay, and it cannot recover any part of that sum, by any reasonable construction its "limit of liability . . . has been exhausted."

---

1. *Pareti* cites *Keene Corp. v. Insurance Co. of N. America*, 597 F. Supp. 946 (D.D.C.), *vacated on other grounds*, 631 F. Supp. 34 (D.D.C. 1985); *Simmonds v. Jeffords*, 260 F. Supp. 641 (E.D. Pa. 1966); *National Casualty Co. v. Insurance Co. of N. America*, 230 F. Supp. 617 (N.D. Ohio 1964); *Samply v. Integrity Ins. Co.*, 476 So. 2d 79 (Ala. 1985); *Conway v. County Cas. Ins. Co.*, 92 Ill. 2d 388, 442 N.E.2d 245 (1982); *Sutton Mutual Ins. Co. v. Rolph*, 109 N.H. 142, 244 A.2d 186 (1968); *Delaney v. Vardine Paratransit, Inc.*, 132 Misc. 2d 397, 504 N.Y.S.2d 70 (N.Y. Sup.Ct. 1986), and *Batdorf v. Transamerica Title Ins. Co.*, 41 Wash. App. 254, 702 P.2d 1211 (1985).

*Keene, Simmonds*, and *Sutton Mutual* involved pre-1966 policy language. *National Casualty* involved a pre-1966 policy; the specific policy language was not before the court. The policy in *Conway* stated that the liability limits must be "exhausted by payment of judgments or settlements." The policy in *Delaney* contained the following language on which the court based its decision: "our payment of LIABILITY INSURANCE limit ends our duty to settle or defend." In *Simmonds, National Casualty, Samply*, and *Sutton Mutual*, the insurance companies tendered or offered to tender their policy limits into court. In *Batdorf*, the court held that the insurer's payment of the policy in full to the insured terminated the insurer's duty to defend. The court's decision rested on policy language stating that the insurance company had the option of paying the policy in full, thus terminating the insured's liability.

Finally, the interpretation here is in accord with the public policy of North Carolina implicit in N.C.G.S. § 1-540.3(a), which provides for advance payments by an insurance company to a person making a claim for bodily injury against the company's insured. This statute states:

*Advance Payments.*

(a) In any claim, potential civil action or action in which any person claims to have sustained bodily injuries, advance or partial payment or payments to any such person claiming to have sustained bodily injuries . . . may be made to such person . . . by the person or party against whom such claim is made or by the insurance carrier for the person . . . [who] is or may be liable for such injuries or death. Such advance or partial payment or payments shall not constitute an admission of liability on the part of the person . . . on whose behalf the payment or payments are made or by the insurance carrier making the payments . . . . The receipt of the advance or partial payment or payments shall not in and of itself act as a bar, release, accord and satisfaction, or a discharge of any claims of the person or representative receiving the advance or partial payment or payments, unless by the terms of a properly executed settlement agreement it is specifically stated that the acceptance of said payment or payments constitutes full settlement of all claims . . . .

N.C.G.S. § 1-540.3(a) (1983). Part of the General Assembly's purpose in enacting this statute was to encourage insurance companies to make advance partial payments to a claimant prior to a final settlement. *Thornburg v. Lancaster*, 303 N.C. 89, 94, 277 S.E.2d 423, 427 (1981), *overruled on other grounds*, *Daniels v. Montgomery Mut. Ins. Co.*, 320 N.C. 669, 360 S.E.2d 772 (1987).

As a result of this statute, seriously injured persons who require long-term medical treatment can now accept piecemeal payments from an insurer before any determination of liability, and those payments represent neither an admission of liability on the part of the insurer nor full satisfaction of the injured party's claims. Under the present law, acceptance of partial or advance payments, absent a properly executed *full* settlement agreement, does not bar the party receiving the payments from suing on the underlying claim.

*Id.* The majority's holding, in effect, that an insurer cannot exhaust its policy limit by making advance payment(s) to a claimant of the maximum sum payable under the policy, and thereby terminate its duty to defend, will discourage payments to claimants prior to a judgment or full settlement, and is thus counter to the public policy implicit in N.C.G.S. § 1-540.3(a).

I thus would hold that, under the facts and the language of the insurance contract here, defendant did not breach its duty to defend its insured.[2] The decision of the Court of Appeals reversing the summary judgment for defendant on the claim that defendant breached its contractual duty to defend thus should be reversed and the cause should be remanded to the Court of Appeals for further remand to the Superior Court, Davie County, for reinstatement of the summary judgment for defendant on the duty-to-defend issue.

For the foregoing reasons, I respectfully dissent.

Justices MEYER and WEBB join in this dissenting opinion.

---

2. The question of whether defendant discharged its contractual obligations to plaintiffs in good faith is not argued. "The duty of an insurance company to defend its insured arises solely from the language of the insurance contract. A breach of the duty to defend can be determined objectively from the contract itself without regard to the good or bad faith of the insurer." *Schiebout v. Citizens Ins. Co. of America*, 140 Mich. App. 804, 813, 366 N.W.2d 45, 49 (1985). An insurance company has a fiduciary duty to defend its insured and to consider the insured's interest. *Pareti v. Sentry Indem. Co.*, 536 So. 2d at 423. "An insurer which hastily enters a questionable settlement simply to avoid further defense obligations under the policy clearly is not acting in good faith and may be held liable for damages caused to the insured." *Id.; see also* Zulkey & Pollard, *The Duty to Defend After Exhaustion of Policy Limits*, For The Defense, June 1985, at 21, 28.

> [A]ny payment of the policy limits which does not release the insured from a pending claim (e.g., unilateral tender of policy limits to the court, the claimant or the insured), even if sufficient to terminate the duty to defend under the wording of the policy involved, raises serious questions as to whether the insurer has discharged its policy obligations in good faith.

*Pareti*, 536 So. 2d at 424; *see also* Van Vugt, *Termination of the Insurer's Duty to Defend By Exhaustion of Policy Limits*, 44 Ins. Couns. J. 254, 264 (1977).