618 So.2d 494 (1993)
Paul KANTACK, M.D.
v.
PROGRESSIVE INSURANCE COMPANY.
No. 92-CA-1677.
Court of Appeal of Louisiana, Fourth Circuit.
April 28, 1993.
Writ Denied June 25, 1993.
Daryl A. Higgins, Michael L. Martin, Windhorst, Gaudry, Ranson, Higgins & Gremillion, Harvey, for plaintiff/appellant.
E. Phelps Gay, Linda M. Uzee, Christovich & Kearney, New Orleans, for defendant/appellee.
Before BARRY, BYRNES, WARD, PLOTKIN and JONES, JJ.
BARRY, Judge.
On June 3, 1988 Lois Young's vehicle was struck by Dr. Paul Kantack's vehicle. She sued Dr. Kantack, his primary insurer, *495 Progressive Insurance Company, and R.L.I. Insurance Company, the doctor's excess insurer. Progressive's coverage was $100,000 and excess coverage was $250,000 to $1,000,000 leaving a $150,000 gap in coverage.
Young settled with Progressive for policy limits and reserved her right to proceed against Dr. Kantack. Progressive withdrew from representation of Dr. Kantack. Dr. Kantack filed a petition alleging a breach of Progressive's contractual duty to defend because the settlement and release did not release him. Dr. Kantack stipulated to fault and a $15,000 settlement was negotiated with Young. Dr. Kantack also incurred attorney's fees and costs. Progressive and Dr. Kantack filed motions for summary judgment. The trial court denied Dr. Kantack's motion and granted Progressive's motion, dismissing Dr. Kantack's suit with prejudice.
Dr. Kantack's appeal submits that summary judgment should have been granted in his favor because Progressive breached its contractual duty to defend and Progressive's motion should have been denied.

THE RECORD
Dr. Kantack stated that Progressive provided his defense until December 13, 1989 when the insurer's attorney withdrew after the settlement with Young. Dr. Kantack claims the settlement was without his consent, in bad faith, violated the insurance policy and disregarded his interests. Dr. Kantack alleged that Progressive was aware of the $150,000 coverage gap. Dr. Kantack claims that Progressive's withdrawal without his dismissal is evidence of bad faith.
To support its motion for summary judgment Progressive submitted its undisputed facts that Dr. Kantack's fault was clear (he stipulated to it) and damages exceeded the $100,000 coverage. Progressive attached Young's petition, its policy, and a January 30, 1991 joint stipulation that "the motor vehicle accident as alleged in the Petition in these proceedings occurred due to the sole fault of Dr. Paul Kantack, reserving to defendants all issues of medical causation and quantum." Also attached were:
A July 20, 1988 letter from Dr. Watermeier to Young's attorney relating to her condition;
A number of dated notations by Dr. Watermeier;
Dr. Watermeier's discharge summary and two reports on operations;
Young's attorney's May 3, 1989 letter to Progressive's attorney offering to settle the claim against Progressive for policy limits of $100,000, waiving approximately $4,000 in interest and costs;
Progressive's counsel's May 16, 1989 letter to Young's counsel stating that Progressive would settle for $100,000 in exchange for dismissal of Progressive and Dr. Kantack;
Young's attorney's May 17, 1989 letter to Progressive's counsel declining the offer, but reiterating the May 3, 1989 offer;
Dr. Kantack's counsel's May 18, 1989 letter advising that he was opposed to Progressive's proposal without a release of Dr. Kantack;
Progressive's counsel's June 1, 1989 letter to Dr. Kantack's counsel noting that Dr. Kantack had counsel long before the settlement negotiations, that Progressive had been in good faith in its negotiations and that Progressive intended to settle the case;
The motion and order of partial dismissal (order signed July 13, 1989) dismissing Progressive and reserving Young's rights to proceed against all of the defendants;
Statement of uncontested material facts.
Dr. Kantack's motion for summary judgment argued that he was entitled to the $15,000 he paid in settlement and $4,043.40 for attorney's fees. Dr. Kantack refers to his affidavit (not in the record), his attorney's affidavit relating to fees, and a statement of uncontested facts including that Progressive and its attorney were aware of the $150,000 gap in coverage.
Dr. Kantack's statement of uncontested facts alleged that Progressive was aware of the $150,000 gap in coverage which exposed him to personal liability after Progressive *496 settled without his consent and dismissal. Dr. Kantack's counsel wrote on May 18, 1989 (prior to settlement) that Dr. Kantack was unequivocally opposed to the settlement without his release. That letter expressed grave concern that tendering $100,000 would "fund" Young's case and provide "an economic cushion in which to continue to pursue this matter to Dr. Kantack's potential economic detriment." The letter objected to payment of policy limits in exchange for a partial release and requested Progressive to continue to defend.
Progressive filed a memorandum in opposition and attached Dr. Kantack's counsel's February 21, 1989 letter to Progressive's counsel advising that he had been retained and copies of the first two pages of depositions by Young and Dr. Kantack.
Dr. Kantack filed a response to Progressive's statement of uncontested material facts and Progressive responded to Dr. Kantack's statement of uncontested facts.
Part ILiability to Others in the policy provides:
We will pay, on behalf of an insured, damages other than punitive or exemplary damages, for which an insured is legally liable because of bodily injury and property damage caused by accident. We will not pay more than the limits of liability shown in the Declarations for all damages resulting from one accident.
We will defend any suit or settle any claim for these damages as we think appropriate. We will also defend any suit involving both punitive and compensatory damages. We will not defend or settle after our limit of liability has been paid.

LAW AND ANALYSIS
Appellate courts review summary judgments de novo and use the same criteria applied by the trial court to determine whether summary judgment is appropriate. Schroeder v. Board of Supervisors, 591 So.2d 342 (La.1991). Summary judgment is proper if the pleadings, depositions, admissions and supporting affidavits show there is no genuine issue of material fact and the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966B; Barham & Churchill v. Campbell, 503 So.2d 576 (La. App. 4th Cir.1987), writ denied 503 So.2d 1018 (La.1987).
The mover must prove the absence of any genuine issue of material fact. Doubt shall be resolved against the mover and in favor of trial on the merits. Urbeso v. Bryan, 583 So.2d 114 (La.App. 4th Cir. 1991). Summary judgment is rarely appropriate for determination of subjective facts, such as motive, intent, good faith, or knowledge. See Johnson v. Hitchens, 518 So.2d 1154 (La.App. 4th Cir.1987).
Ambiguous words and phrases in an insurance contract are to be construed in favor of the person claiming coverage. Credeur v. Luke, 368 So.2d 1030 (La.1979). Policy provisions which limit the insurer's liability or place restrictions on policy obligations should be enforced unless they conflict with statutes or public policy. Livingston Parish School Board v. Fireman's Fund American Insurance Company, 282 So.2d 478 (La.1973).
Dr. Kantack relies on Brown v. Lumbermans Mutual Casualty Company, 326 N.C. 387, 390 S.E.2d 150 (1990) which followed Pareti v. Sentry Indemnity Company, 536 So.2d 417 (La.1988). The duty to defend provision in Brown stated: "Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted." 390 S.E.2d at 153.
In Brown the North Carolina Supreme Court found ambiguity in the duty to defend provision (different from Progressive's policy) and construed the ambiguity in favor of the insured. The Court concluded that "the insurer's duty to defend continues until its coverage limits have been exhausted in the settlement of a claim or claims against the insured or until judgment against the insured is reached." Id. at 154. The Brown court concluded that under the policy's ambiguous terms relating to the duty to defend, the insurer's unilateral tender to and the injured party's acceptance of the policy's limit without a release of the insured did not relieve the *497 insurer of its duty to defend. Id., 390 S.E.2d at 155-56.
Brown is distinguishable from this case. The insurance policy in this case is not ambiguous. The North Carolina court's broad interpretation of the policy is not persuasive here. That case involves different circumstances and different policy provisions.
Progressive relies on Pareti, 536 at 417 which is also distinguishable from this case. Pareti involved a cross claim, not a summary judgment, and there was no allegation of the insurer's bad faith. In Pareti the defendants' insurer negotiated a compromise and release whereby the insurer and its insureds were released from all liability for the policy's limit. The plaintiffs' uninsured carrier filed a cross claim seeking indemnity against the defendants. Subsequent to the compromise the defendants were still represented by the insurer's attorney whose motion for a summary judgment (in the UM carrier's cross claim) was denied. The insurance company then notified its insureds/defendants that it would no longer provide a defense against the cross claim. The defendants cross claimed against their insurer alleging a breach of its duty to defend and prayed for attorney's fees and costs.
In Pareti, 536 So.2d at 420 the following policy language was unambiguous:
We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted.
The insureds in Pareti argued that it was against public policy for an insurance company to terminate its defense after policy limits are paid. The Louisiana Supreme Court reviewed cases from other jurisdictions and concluded that public policy did not mandate disregarding the clear policy provision that the duty to defend terminates on payment of policy limits. Id. at 422-23.
Pareti further stated:
[T]he protection afforded to insureds against this contingency is that in every case, the insurance company is held to a high fiduciary duty to discharge its policy obligations to its insured in good faithincluding the duty to defend the insured against covered claims and to consider the interests of the insured in every settlement. (Citations omitted).
Id. at 423.
Pareti made it clear that an insurer must make every effort to avoid prejudicing its insured by the timing of its withdrawal:
Further, any payment of the policy limits which does not release the insured from a pending claim (e.g., unilateral tender of policy limits to the court, the claimant or the insured), even if sufficient to terminate the duty to defend under the wording of the policy involved, raises serious questions as to whether the insurer has discharged its policy obligations in good faith.
Id. at 424. Based on the unambiguous policy language and no showing of bad faith, Pareti held that the insurer's duty to defend terminated upon payment of policy limits through settlement.
Our case is distinguishable from Pareti. According to the documentation, Progressive wasted no time to secure its release in exchange for the policy's limit. Young's offer was made May 3, 1989. On May 16, 1989 Progressive attempted to negotiate a release for Dr. Kantack and itself. Young declined Progressive's offer on May 17, 1989 and reiterated the initial offer to release only Progressive. Progressive informed Dr. Kantack on June 1, 1989 that it would accept Young's offer (after Dr. Kantack's May 18, 1989 letter advising that he was adamantly opposed). Progressive was dismissed on July 13, 1989 and its counsel withdrew from representation of Dr. Kantack.
Unlike the insurer in Pareti, Progressive did not secure a release for Dr. Kantack and itself. The Pareti insurer upheld its *498 obligation to defend by having its insured released from liability. The insurer did not defend as to the cross claim (after denial of its motion for summary judgment).
Dr. Kantack's allegations and documentation raise genuine issues of material fact as to whether Progressive's payment of policy limits fulfilled its duty to defend, whether the timing of Progressive's withdrawal was detrimental to Dr. Kantack, and whether Progressive discharged its policy obligations in good faith.
The summary judgment in favor of Progressive is reversed. Denial of summary judgment as to Dr. Kantack is affirmed. The matter is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.
WARD, J., concurs with reasons.
PLOTKIN, J., concurs with written reasons.
JONES, J., concurs for the reasons assigned by PLOTKIN, J.
BYRNES, J., dissents with reasons.
WARD, Judge, concurring.
I concur in the view that summary judgment was inappropriate. In interpreting an insurance policy provision similar to this, Pareti, supra, makes clear that the issue is one of whether an insurer discharged its duty to defend the insured in good faith. Good faith is an issue of fact. When it is contested, it is not usually capable of resolution in summary judgment proceedings.
I disagree with that part of the majority decision which gives the connotation that an insurer may not be in good faith if the settlement prejudices the insured or aids the insured's opposition. If settlement does prejudice the insured, it is unfortunate, but it is only one thing to consider in resolving ultimate question of good faith, a question capable of answer only by consideration of widely divergent facts too numerous to be listed or categorized.
On the other hand, we should make it known that we reject Dr. Kantack's argument, and Brown, supra, that an insurer owes a duty to defend without limitation. The circumstances vary, but an insurer does not owe a duty to defend when it is clear that the claim far exceeds policy limits and that in spite of good faith efforts the insurer cannot effect a settlement within policy limits that will release its insured.
PLOTKIN, Justice, concurring with written reasons:
I agree with the majority's conclusion that the summary judgment in favor of defendant Progressive Insurance Company was improperly granted because a genuine issue of material fact remains on the question of whether Progressive's actions in settling with the plaintiff in the underlying action were in bad faith. However, I would assign the following additional reasons. Thus, I concur.
The applicable rule, as established by the Louisiana Supreme Court in Pareti v. Sentry Indemnity Co., 536 So.2d 417 (La. 1988), is as follows:
We hold, therefore, that once the liability insurer exhausted its policy limits through a good faith settlement, it was no longer obligated to defend the insured in the separate action based on the same accident. We do not suggest, however, that a liability insurer's duty to defend its insured will always be discharged by exhaustion of its policy limits. As discussed further below, our holding today is premised upon both the language of the policy before us and the facts of this particular case.
Id. at 418-19. (Bold emphasis added; italics emphasis in original.)
Thus, the Supreme Court indicated that the determination of whether Progressive is entitled to judgment as a matter of law in this case depends on a fact-based consideration of whether its settlement with Lois Young in the underlying action was undertaken in good faith.
Unquestionably, a liability insurer's duty to defend is a paramount obligation of the insurance policy when the policy includes a *499 provision guaranteeing the insured a defense. However, as the Pareti case demonstrates, that obligation does not necessarily continue after the insurance company has settled the case for its policy limits under certain circumstancesi.e., when that settlement is undertaken in good faith.
Determination of whether an insurance company's settlement with a plaintiff was undertaken in good faith is a two-step analysis, depending on whether the settlement includes a release of the insured party. When release of the insured is a part of the settlement, the insurance company's duties may be fulfilled through a thorough investigation and evaluation of the claim, followed by a good faith settlement which includes the release of the insured.
However, when, as here, the insured party is not released from liability as a part of the insurance company's settlement with the plaintiff, the insurance company has a continuing duty to do the following things prior to withdrawing its defense of the defendant insured:
1. Give timely notice of its intent to withdraw to the insured
2. Pay the policy limits
3. Determine that its withdrawal will not result in undue prejudice to the insured
4. Transfer to the insured all evidence and communications prepared by the insured which are relative to the case, except those protected by the attorney-client privilege, including, but not limited to, the investigation file, expert reports, and evaluative reports.
In the instant case, Progressive has failed to show on the record that its withdrawal from defending Dr. Kantack was undertaken in good faith under the guidelines listed above. Thus, I agree with the majority's decision to reverse the granting of the motion for summary judgment.
JONES, J., concurs for the reasons assigned by PLOTKIN, J.
BYRNES, Justice, dissenting with reasons.
I agree that an insurance company which follows the steps set forth by Judge Plotkin will be deemed to have acted in good faith when making a policy limits settlement that does not effectively release the insured from liability. However, regardless of what the insurance company does, the insured must still prove that he was prejudiced by the settlement of the insurance company before he can recover damages. Dr. Kantack has failed to raise any genuine issues of material fact sufficient on the question of prejudice.
Dr. Kantack argues that he was prejudiced by Progressive's settlement in two ways:
I. First Dr. Kantack argues in his brief that:
Progressive's tendering of its policy limits without obtaining a release of its insured forced counsel for Dr. Kantack to significantly alter trial strategy from a course in which liability was to be hotly contested unto one in which after Progressive's settlement, liability was fully and completely admitted. (Emphasis added).
This argument is without merit for two reasons, either of which is sufficient to defeat Dr. Kantack's contention:
A. Dr. Kantack stipulated to liability. He should not be allowed to disavow that stipulation unless he can show that it was obtained through fraud or "duress." He does not argue that it was.
B. Progressive did not "force counsel for Dr. Kantack to significantly alter trial strategy." Progressive's withdrawal from the case did not force Dr. Kantack's counsel to admit liability. That was his own decision. The fact that a party may weigh the advantages of settling more readily when faced with the cost of paying for his own defense is not legal prejudice. If that is legal prejudice the insurer could never withdraw, because the insured could always argue that the cost of defense would affect his strategy.
Plaintiff failed to raise a genuine issue of material fact regarding this first specification of prejudice.

*500 II. Next Dr. Kantack argues that:
"Progressive's tendering of their limits in essence funded the case for plaintiffs, which gave them the freedom to proceed knowing that [a] substantial part of their recovery had already been obtained." (Emphasis added.)
Every settlement with a plaintiff that does not fully dispose of all of that plaintiff's claims could be said to "fund" that plaintiff's effort to pursue the balance of his or her claims. That is not legal prejudice. It does not affect the merits of the case or any procedural or discovery issues. Plaintiff has failed to raise a genuine issue of material fact regarding this second specification of prejudice.
As plaintiff only raised two issues of prejudice, both of which were insufficient on the face of the record to raise any genuine issues of material fact even if we accept them as true his case must fall.
Pareti v. Sentry Indemnity Company, 536 So.2d 417 (La.1988) is the only Louisiana plaintiff could cite in support of his argument that the insurance company acted in bad faith and it does so only in dicta. The Pareti court made no finding of bad faith. However, in dicta the court did suggest what might constitute bad faith:
"... [T]he insurer must make every effort to avoid prejudicing the ensured by the timing of its withdrawal from the litigation. The insurer should make allowances for the time that the insured will need to retain new counsel, and should continue to represent the insured after settlement, if necessary, until new counsel can be retained." Id. at 423. (Emphasis added).
There were no gaps in representation in this case. Progressive did not pull out on the eve of trial, or the day before a deposition was scheduled or motions were set for hearing or pleadings or memoranda were due leaving plaintiff's counsel to scramble on short notice, unable to prepare adequately. No defaults were taken. No rights were waived or forfeited. No dilatory or declinatory exceptions were lost. No witnesses became unavailable. Nothing prejudicial occurred in front of a jury. Nothing, in short, that could be recognized by the law as prejudice occurred.
Even if we accept the facts as argued by Dr. Kantack he has still failed to raise any genuine issues of material fact.
For the foregoing reasons I would affirm the judgment of the trial court.