IODICE v. JONES

[135 N.C. App. 740 (1999)]

ALINE JOAN IODICE, JAMES V. IODICE, AND MARY J. IODICE, PLAINTIFFS V.
THOMAS RICHARD JONES, DEFENDANT

No. COA98-1622

(Filed 7 December 1999)

**Insurance— automobile—UIM coverage—two separate policies**

In a declaratory judgment action seeking a determination of whether plaintiffs had purchased one or two underinsured motorist policies from unnamed defendant GEICO, the trial court's grant of summary judgment in favor of GEICO is reversed and remanded for entry of judgment declaring that GEICO had issued two separate policies to plaintiffs because: (1) GEICO's internal processing system would not allow more than three vehicles to be included in one policy endorsement declaration, and plaintiffs had four cars requiring a second policy endorsement declaration to provide insurance coverage for their fourth vehicle; (2) the policy endorsement declaration sheets attached to the policies reveal two different policy numbers; (3) plaintiffs received a separate billing for the two policies and those billings show a different renewal date for each policy number; (4) GEICO's own rules and regulations provide the insured is to receive the multi-car discount, even though all the vehicles cannot be included in one policy; and (5) the policy's language that the fourth car has been added to the policy, which shows some evidence of a single policy, is not dispositive because any ambiguity is construed against GEICO since it drafted the documents in question.

Appeal by plaintiffs from order and judgment filed 21 September 1998 by Judge L. Todd Burke in Forsyth County Superior Court. Heard in the Court of Appeals 19 October 1999.

*Elliot, Pishko, Gelbin & Morgan, by Robert M. Elliot, for plaintiff-appellants.*

*Womble Carlyle Sandridge & Rice, by Allan R. Gitter and Jack M. Strauch, for unnamed defendant-appellee Government Employees Insurance Company.*

*Michael R. Greeson, Jr. for unnamed Integon/T.R. Jones.*

*Ken Rotenstreich for unnamed Nationwide.*

GREENE, Judge.

Aline Joan Iodice (Ms. Iodice), James V. Iodice, and Mary J. Iodice (Mrs. Iodice) (collectively, Plaintiffs) appeal the trial court's entry of an order granting summary judgment for unnamed defendant, Government Employees Insurance Company (GEICO). Plaintiffs had requested a declaratory judgment on the issue of whether they had purchased one or two underinsured motorist (UIM) policies from GEICO.

The pertinent evidence reveals that on 4 September 1996, Ms. Iodice was the front seat passenger in a vehicle involved in a collision with the named defendant, Thomas Richard Jones (Jones). Ms. Iodice was a passenger in a Mazda MX3 (Penney vehicle) driven by Fiona Penney.

Plaintiffs filed this civil action against Jones on 24 January 1997. Jones was covered by a primary insurance policy issued by Integon Insurance Company. Integon settled on behalf of Jones, distributing its policy limits to Plaintiffs and other victims of the collision.

There were two UIM carriers providing additional coverage for this collision. GEICO was the UIM carrier covering Plaintiffs' vehicles, and Nationwide Insurance Company was the UIM carrier covering the Penney vehicle. In June 1998, just prior to the trial of this action, each of the UIM carriers entered into a settlement agreement. Pursuant to this agreement, Plaintiffs filed a motion for declaratory judgment to determine how many policies were provided by GEICO to Plaintiffs on 16 June 1998. In support of Plaintiffs' motion for declaratory judgment, Plaintiffs submitted an affidavit from Mrs. Iodice and documents related to the alleged policies to the trial court on 14 September 1998. Mrs. Iodice's affidavit provided, in relevant part:

3. At the time of the collision, our family was covered by insurance which we had purchased from GEICO Insurance Company. We had maintained coverage with GEICO for a number of years. Up until 1996 we had a single policy, policy number 367-90-75, which covered all of our family vehicles. . . .

4. In 1995 we purchased our fourth family vehicle, a 1988 Merkur Scorpio. Upon purchasing the vehicle, I called the GEICO Policyholder Service at 1-800-841-3000. I spoke with the customer representative from GEICO, and informed her that we would need to add another vehicle to our automobile insurance policy.

The representative informed me that the maximum number of vehicles which GEICO could maintain on a single policy was three, and that in order to cover our fourth vehicle, GEICO would need to issue a second policy. The representative then asked me to specify the coverage which I wished to purchase for the fourth vehicle, and I provided the information.

5. In 1996, a second policy was issued by GEICO to cover the fourth vehicle. The policy was issued under policy number 367-90-75-1. . . .

6. Since the issuance of policy number 367-90-75-1, we have received separate bills and statements with respect to the two policies.[1] The bills reflect different policy numbers, different issuance dates, different premiums and separate charges for payment by installment.

7. I have . . . received [documents] from GEICO concerning policy number 367-90-75 . . . [and] documents . . . from GEICO concerning policy number 367-90-75-1 . . . .

8. A comparison of these documents shows the following:

(a) That each policy shows a separate number and separate billing dates;

(b) That we have been billed separately for each policy;

(c) That each policy includes a separate installment charge, meaning that we were charged the same amount—$3.00—for paying each policy in installments, regardless of how many cars were covered by each policy.

9. Based on the above documentation, at all times, GEICO and our family treated the two policies as separate and independent policies.

10. We have paid all premiums reflected on these two policies as required to maintain coverage for all of our family vehicles.

---

1. The record shows Mrs. Iodice received separate bills for policy number 367-90-75 and policy number 367-90-75-1. For the September 1996 to March 1997 period, the "Aug-27-Policy Renewal" on number 367-90-75 reveals a premium of $1,185.32. For the September 1996 to March 1997 period, the "Aug-26-Policy Renewal" on number 367-90-75-1 reveals a premium of $252.78.

11. I have just received the renewal documents concerning each policy. As always, they were sent in separate envelopes and came at different times. Each has a separate billing statement requesting separate payments. I will pay, as always, with separate checks, specifying the policy number of each.

"Policy number 367-90-75," as shown on a "Policy Endorsement Declaration" noted that it insured a 94 Dodge, an 88 Isuzu, and an 87 Chrysler. "Policy number 367-90-75-1," as shown on a "Policy Endorsement Declaration" noted that it insured an 88 Merkur. The "Policy Endorsement Declaration" issued for policy number 367-90-75-1 contained the following language: "The 88 Merkur has been added to your policy." Each "Policy Endorsement Declaration" noted that the policy provided $100,000.00 combined uninsured/underinsured motorists coverage, with a separate premium paid for this coverage on each policy. The "Policy Endorsement Declarations" also noted the policy period, the named insured, the amount of all coverages, and the type of coverages. The record does not reveal whether policies of insurance were delivered to Plaintiffs. GEICO did, however, admit in affidavits filed with the trial court that it "issued" to Plaintiffs a "policy contract number[ed] 367-90-75" and a "policy contract number[ed] 367-90-75-1." Copies of those separate polices were attached to the affidavits.

GEICO submitted the affidavit of Ms. Alice Hinkle, underwriting manager for GEICO. That affidavit provided in pertinent part:

[Policy number] 367-90-75-1 is an extension of basic policy number 367-90-75-0 and is not a separate policy. The extension number is denoted by a -1, because our internal processing system will not allow more than three vehicles to be listed under one declaration sheet. Extension 367-90-75-1 does receive the multi-car discount and the premiums are calculated using the same rating elements. The basic and extension numbers listed above have the same effective and expiration dates, and all renewal paperwork is mailed on the same date.

During discovery and in response to one of Plaintiffs' request for production of documents relating to "all policies, regulations, rules and all other documents concerning charges and discounts for coverage, specifically including any multi-vehicle discount; billing; installment payments; and other documents reflecting GEICO's billing practices," GEICO provided Plaintiffs with a document entitled "Personal Auto Manual" which states, in relevant part:

### D. Single and Multi-Car Risks

The applicable Multi-Car Rating Factor shall apply if two or more four-wheel private passenger autos owned by an individual or owned jointly by two or more individuals residing in the same household are insured in the same policy.

### Exception

*If a company's procedure does not permit insuring all vehicles in the same policy,* the applicable Multi-Car Rating Factor shall apply only if the company insures two or more four-wheel private passenger autos owned by an individual or owned jointly by two or more individuals resident in the same household. (emphasis added).

In granting GEICO's motion for summary judgment, the trial court declared that "as of the date of the automobile accident in which [P]laintiff Aline Joan Iodice was injured, GEICO had issued only one policy of underinsured motorist insurance to [P]laintiffs."

The dispositive issue is whether policy numbers 367-90-75 and 367-90-75-1 constitute one policy or two policies.[2]

GEICO argues there was only one policy of insurance issued to Mrs. Iodice, and it included three vehicles. This policy was subsequently "modified" or "extended" to provide coverage for the 88 Merkur. The evidence, however, simply does not support this argument. GEICO's "internal processing system" would not allow more than three vehicles to be included in one "Policy Endorsement Declaration." Thus, a second "Policy Endorsement Declaration" was required and issued to provide insurance coverage for the fourth vehicle. The record is unclear as to whether the "internal processing system" prohibited the insuring of more than three vehicles in one *policy* of insurance. There is information contained in the record, submitted by GEICO in response to Plaintiffs'· interrogatories, suggesting GEICO may have a procedure that "does not permit insuring [more than

---

2. This issue is important because an insured party is only permitted to stack *interpolicy* underinsured motorist coverages for non-fleet private passenger type vehicles. *N.C. Farm Bureau Mut. Ins. Co. v. Stamper*, 122 N.C. App. 254, 258, 468 S.E.2d 584, 586, *disc. review denied*, 343 N.C. 513, 472 S.E.2d 17 (1996); N.C.G.S. § 20-279.21(b)(4) (Supp. 1998). An insured may not stack underinsured motorist coverages pertaining to separate vehicles insured under a single policy of insurance. *Honeycutt v. Walker*, 119 N.C. App. 220, 224, 458 S.E.2d 23, 26, *disc. review denied*, 342 N.C. 192, 463 S.E.2d 236 (1995); N.C.G.S. § 20-279.21(b)(4).

three] vehicles in the same policy." In any event, GEICO submitted affidavits, in response to Plaintiffs' request for the production of documents, plainly stating that separate policies of insurance were "issued" to Mrs. Iodice and included copies of those policies as attachments to those affidavits. Although the policies themselves do not contain any policy numbers, the "Policy Endorsement Declaration" sheets attached to the policies reveal the different policy numbers, *i.e.*, 367-90-75-1 and 367-90-75. Furthermore, Mrs. Iodice received a separate billing for the number 367-90-75 and the number 367-90-75-1 premium charges, and those billings show a different renewal date for each policy number. GEICO, therefore, cannot now deny that two separate policies were issued to Mrs. Iodice.

It is not material that the 88 Merkur, insured in policy number 367-90-75-1, received the multi-car discount. GEICO relies on this discount to support its argument that there is but one policy. GEICO's own rules and regulations, however, provide the insured is to receive the multi-car discount even though all the vehicles cannot be included in one policy.

We acknowledge the language contained in the 367-90-75-1 "Policy Endorsement Declaration," stating that "[t]he 88 Merkur has been added to your policy," is some evidence of a single policy of insurance. This language, however, in the context of all the materials submitted in this case, is not dispositive of whether there is a single policy. At best, this language reveals nothing more than an ambiguity with respect to the question of whether there is one policy or two policies. As GEICO drafted the documents in question, any ambiguity created by their language must be resolved against them and in favor of the insured. *Brown v. Lumbermens Mut. Casualty Co.*, 326 N.C. 387, 392, 390 S.E.2d 150, 153 (1990).

The summary judgment entered for GEICO, therefore, must be reversed and this matter remanded for the entry of judgment declaring that as of the date of the automobile accident in which Plaintiff Aline Joan Iodice was injured, GEICO had issued two separate policies of underinsured motorist insurance to Plaintiffs.

Reversed and remanded.

Judges WALKER and HUNTER concur.