| iBARRY, Judge.
Dr. Norman Gray appeals summary judgments granted to several defendants in his wrongful death action.[1] According to Dr. Gray’s petition his son, Dr. Martin Gray, was attending a Tulane University Medical Center School of Medicine function at Antoine’s Restaurant on June 10, 1990. During the meal a large mass of meat lodged in his throat and he was asphyxiated. He sued Tulane University Medical Center School of Medicine [Tulane], Dr. Marcos FeBornstein, Antoine’s Restaurant and its maitre d’, Henri’ Alciatore, and the City of New Orleans and the Health Department Emergency Medical Service.
Dr. Norman Gray alleged the negligence of Tulane doctors and residents when they attempted to assist his son. Dr. Gray alleged that Dr. FeBornstein was negligent because he was not able to remove the obstruction. He claimed | aAntoine’s Restaurant and Alcia-tore were negligent because Alciatore did not control the spectators which made it difficult for emergency technicians to carry his ailing son from the restaurant and did not show them the more accessible way out. The deceased’s mother, Vesta Gray, only sued Dr. FeBornstein. The cases are consolidated. (# 93-CA-2060 e/w # 93-CA-2061). Mrs. Gray did not appeal.
Dr. Norman Gray argues that: (1) Tulane Medical Center breached its duty to exercise reasonable care; (2) Dr. FeBornstein did not act with reasonable and due care; (3) Henri’ Alciatore breached his duty of reasonable care; and (4) summary judgment is improper when material issues of fact remain.

THE LAW

Appellate courts review summary judgments de novo and use the same criteria as the trial court. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991); Kantack v. Progressive Insurance Company, 618 So.2d 494 (La.App. 4th Cir.1993), writ denied, 620 So.2d 845 (La.1993). Summary judgment is proper if the pleadings, admissions, depositions and supporting affidavits show there is no issue of material fact and the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966B; Barham & Churchill v. Campbell, 503 So.2d 576 (La.App. 4th Cir.1987), writ denied, 503 So.2d 1018 (La.1987).
The burden is on the mover to prove the absence of any genuine issue of material fact. Any doubt shall be resolved against the mover and in favor of a trial on the merits. Sassone v. Elder, 626 So.2d 345 (La.1993); Raine v. CECO Corporation, 627 So.2d 713 (La.App. 4th Cir.1993). Affidavits ^submitted by the mover must be closely *247 scrutinized while those of the opponent are treated indulgently. Urbeso v. Bryan, 583 So.2d 114 (La.App. 4th Cir.1991).

DR. FEBORNSTEIN AND TULANE MEDICAL CENTER

Dr. FeBornstein and Tulane attached to the motion for summary judgment: (1) Dr. Daniel Winstead’s affidavit; (2) New Orleans Health Department Emergency Medical Service Ambulance run report; (3) Dr. FeBorn-stein’s affidavit; (4) Dr. Martin Gray’s autopsy protocol dated June 11, 1989; (5) the death summary progress notes at Charity Hospital dated June 10, 1989; (6) the coroner’s laboratory report dated June 21, 1989; and (7) the medical review panel opinion.
Dr. Winstead declared that he attended the departmental graduation dinner in the Japanese Room of Antoine’s Restaurant on June 10, 1989. At about 8:00 p.m. he observed Dr. Martin Gray stagger into the room. Dr. Nancy Chiarello accompanied him to a place at her table which she had reserved for him. Shortly afterward he observed Dr. Gray retching and in distress and Dr. Tomlinson went to assist. Dr. Tomlinson instructed a waiter to call an ambulance and suggested the Heimlich maneuver to remove the obstruction. Dr. Winstead and others pulled Dr. Gray to his feet and Dr. Tomlin-son administered five or six forceful Heimlich maneuvers. Dr. Gray was not breathing, but a neurology resident determined his pulse was 60 and strong. Dr. FeBornstein arrived on the scene and began mouth-to-mouth resuscitation. Dr. Gray’s pulse remained strong but he was not breathing. Dr. Fe-Bomstein unsuccessfully attempted to clear Dr. Gray’s airway with a spoon. Someone Usuggested a tracheostomy and asked a waiter to bring a knife. Within seconds the emergency medical technicians arrived and an ambu bag was used to try to move air. Dr. Gray’s pulse failed, closed chest massage was initiated and again there was talk of a tracheostomy. However, the emergency technicians insisted that Dr. Gray be taken to a hospital and they could use equipment in the ambulance. As Dr. Gray was being taken to the ambulance, Dr. FeBornstein continued his attempts at mouth-to-mouth resusei-tation. Dr. Tomlinson continued to administer closed chest massage. Dr. FeBornstein boarded the ambulance with Dr. Gray.
Dr. FeBornstein stated that he attended the graduation dinner. At about 8:00 p.m. he left to make a telephone call, stepped into the hallway and saw Dr. Gray on the floor in a cyanotic condition and not breathing. Dr. Gray’s heart was beating and he had a pulse. Dr. FeBornstein was told that an ambulance had been called. He began mouth-to-mouth resuscitation and stuck his fingers into Dr. Gray’s mouth, but he could not clear the obstruction. Dr. Gray’s tongue had collapsed. Dr. FeBornstein attempted unsuccessfully to clear the airway with a spoon. Seconds later emergency technicians arrived with an ambu bag and a laryngoscope. He used the laryngoscope to look down Dr. Gray’s throat; however, the laryngoscope was either straight or not lighted and he was unable to observe an obstruction. As the emergency technicians took Dr. Gray to the ambulance he continued mouth-to-mouth resuscitation while Dr. Tomlinson continued to administer closed chest massage. Dr. Fe-Bornstein rode in the ambulance and told the emergency technicians to give Epinephrine, Atropine and sodium bicarbonate. Dr. Gray was still in asystole and no pulse |5was detected. When the ambulance arrived at Charity Hospital, the emergency staff took over.
According to the autopsy protocol, the final diagnosis was asphyxia secondary to aspiration of foreign matter (mass unchewed meat) and the death was classified as accidental. The laboratory report showed that Dr. Gray had a blood alcohol level of .29 percent. According to the medical review panel there was no evidence that Dr. FeBornstein obstructed the efforts of the emergency medical technicians. The EMT reports shows only a momentary deferral to Dr. FeBornstein. The opinion stated that Dr. FeBornstein tried his best with his fingers, a spoon and a laryngoscope to remove the obstruction, which was very deep and required a special instrument to remove it. The panel found no negligence on the part of Dr. FeBornstein and Tulane in providing gratuitous medical treatment to Dr. Gray.
In his opposition and appellate brief Dr. Norman Gray argued that La.R.S. 37:1731, *248 the Good Samaritan Statute, applies to rendering medical care to a stranger. Because Dr. Gray was a guest at the party and was known to Dr. FeBornstein, he claimed that the statute did not apply. Dr. Gray claims that his son was an invitee and was owed a duty of care by Tulane and the doctors in attendance at the party who had a duty to protect Dr. Gray from foreseeable dangers. Because eating and drinking were involved in the Tulane function, the defendant hosts should have foreseen such a problem. Alternatively, Dr. Gray submits that the Good Samaritan Statute applies to doctors, not to Tulane Medical Center. He claims that whether or not Dr. FeBornstein was negligent by taking control of a medical situation remained at issue.
|6La.R.S. 37:1731 provides:
No physician or surgeon licensed under the provisions of Chapter 15 of this Title, or nurses licensed under the provisions of Chapter 11 of this Title who in good faith gratuitously renders emergency care or services at the scene of an emergency, except in a public or private hospital of this State, to a person or persons in need thereof shall be liable for any civil damages as a result of any act or omission by such person in rendering the care or services or as a result of any act or failure to act to provide or arrange for further medical treatment or care for the person involved in the said emergency.
The statute does not require that the victim be a stranger. Dr. FeBornstein, in good faith, gratuitously rendered emergency care and tried to save the life of Dr. Martin Gray. Under La.R.S. 37:1731 he cannot be liable. Although Dr. Norman Gray argues that material issues of fact remain as to Tulane’s liability, he does not state what those facts are.
There is no basis to hold Tulane University Medical Center hable. Summary judgment was properly granted.

ALCIATORE AND ANTOINE’S RESTAURANT

Henri’ Aleiatore filed a motion for summary judgment and attached Dr. Norman Gray’s deposition which admitted that he did not know whether Aleiatore was at the restaurant on the night of the incident. Alcia-tore noted that in two years Dr. Norman Gray did not produce any evidence to connect him to the dinner or the aftermath. He disputed the claims that he required the ambulance attendants to climb steep stairs to reach Dr. Gray, and that he failed to control the crowd in order to allow the attendants to move Dr. Gray. Aleiatore argued that the stairs from the Japanese Room are the only way to enter or exit. Aleiatore said the crowd around Dr. Gray were doctors. He frargued that if he had forced the doctors to move from Dr. Gray’s side he could be negligent for obstructing their attempts to render assistance.
Dr. Norman Gray argued that there are factual disputes including whether or not Al-ciatore was in the restaurant that night. He stated that more depositions had to be taken, but he did not explain why they were not taken during the two years before the hearing, to oppose the summary judgment. Dr. Norman Gray claims that the narrow entrance and exit to the dining room is a contested issue because he believes it played a part in his son’s death. Dr. Gray did not dispute the fact that the stairway was the only in or out to the Japanese Room. He argued that Aleiatore should have been trained to assist persons who choke on food and he failed in that duty to his son.
Dr. Martin Gray was apparently highly intoxicated when he tried to consume a steak. He was surrounded by many physicians who rendered immediate emergency medical services. The obstruction in his throat was a very large piece of meat. Within moments there were repeated attempts to clear his air passageway, to no avail. There are no issues of material fact and the defendants are entitled to summary judgment as a matter of law.
The trial court properly granted summary judgments to Dr. FeBornstein, Tulane University Medical Center and Henri’ Aleiatore. The judgments are affirmed.
AFFIRMED.
ARMSTRONG, J., concurs in result.

. Dr. Gray's petition for appeal of the August 20, 1993 summary judgment granted to Henri' Alcia-tore is not signed by the trial court. It was clocked in on September 2, 1993 at 3:46 p.m. just minutes after he filed his petition for appeal of the August 2, 1993 summary judgment (granted to Dr. FeBornstein and Tulane Medical Center). Henri' Alciatore did not contest the petition for appeal. Any opposition to the appeal of the August 20, 1993 judgment is considered waived.