ENTERPRISE LEASING COMPANY SOUTHEAST, D/B/A ENTERPRISE RENT-A-CAR, Plaintiff v. ANGELA WILLIAMS, Defendant and Third-Party Plaintiff v. VIRGINIA L. WILLIAMS and DISCOVERY INSURANCE CO., Third-Party Defendants

No. COA05-865

(Filed 4 April 2006)

**1. Appeal and Error— appealability—interlocutory order—substantial right—insurer's duty to defend**

Although defendant/third-party plaintiff's appeal from the grant of summary judgment in favor of third-party defendant insurance company is an appeal from an interlocutory order since other claims remain outstanding in the trial court, notwithstanding dismissal of all claims involving the insurance company by virtue of the order, this appeal is properly before the Court of Appeals because the issue of the insurer's duty to defend involves a substantial right to both the insured and the insurer.

**2. Insurance— leased vehicle—lessee not driver—insurer's duty to defend**

An automobile policy issued to defendant provided no coverage and third-party defendant insurer had no duty to defend defendant insured with regard to an accident involving a car

leased by defendant and driven by her sister-in-law at a time when defendant was not in the car because: (1) the express terms of the policy provide that the insurance company has no duty to defend defendant in any suit for property damage not covered under the policy (damage to property leased to the insured is excluded from coverage); (2) defendant's sister-in-law does not fall within the policy definition of a family member; (3) even assuming arguendo that the sister-in-law qualified as a lessee of the vehicle, the insurance company would be under no duty to defend a suit against defendant because the sister-in-law was not a resident of defendant's household, and thus, would not qualify as a covered insured under the policy; (4) the policy is not ambiguous merely based on the fact that the insurance company promises to defend suits seeking property damage in one sentence and then qualifies that duty in another sentence; and (5) although defendant contends the rented vehicle was a non-owned auto for purposes of coverage, she did not have immediate charge or control over the leased automobile at the time of the collision as she was neither the driver nor passenger.

Appeal by defendant/third-party plaintiff from order entered 16 March 2005 by Judge Robert C. Ervin in Mecklenburg County Superior Court. Heard in the Court of Appeals 25 January 2006.

*Edward J. McNaughton for defendant/third-party plaintiff-appellant Angela Williams.*

*Golding, Holden & Pope, L.L.P., by J. Scott Bayne, for third-party defendant-appellee Discovery Insurance Company.*

JOHN, Judge.

Defendant and Third-Party Plaintiff Angela Williams ("Angela") appeals the trial court's 16 March 2005 order ("the Order") granting summary judgment in favor of Third-Party Defendant Discovery Insurance Company ("Discovery"). For the reasons discussed herein, we affirm the trial court.

Pertinent factual and procedural history includes the following: In January 2004, Third-Party Defendant Virginia Williams ("Virginia") arranged to rent an automobile from Plaintiff Enterprise Leasing Company d/b/a Enterprise Rent-A-Car ("Enterprise"). On 18 January 2004, Virginia was driven by her sister-in-law Angela to a Charlotte, North Carolina, branch of Enterprise to pick up the rented vehicle.

ENTERPRISE LEASING CO. v. WILLIAMS

[177 N.C. App. 64 (2006)]

Enterprise rental agent Carolyne Westfall ("Westfall") handled Virginia's reservation. After Westfall prepared a rental agreement containing Virginia's name, address, telephone numbers, and other personal information, Virginia presented a credit card to Westfall for payment of the rental charge. However, Virginia's credit card was denied, and Westfall thereupon refused to rent her the vehicle.

Upon retrieving a credit card from her automobile, Angela offered to pay the rental charge. Westfall declined, explaining it was required that Angela be designated as "Renter" of the vehicle if she made payment. However, Westfall continued, Angela could list Virginia as an additional driver of the rented vehicle for an additional fee. According to Westfall, "Angela and Virginia then had a conversation, during which Virginia specifically stated to Angela, 'I'll just drive your car.' "

Angela thereafter informed Westfall she wished to rent a vehicle in her name, but did not want to list Virginia as an additional driver. Westfall then erased Virginia's personal information from the rental agreement ("the Agreement") and inserted Angela's address, telephone numbers, driver's license number and expiration date, and date of birth. However, Westfall failed to replace Virginia's name with that of Angela on the Agreement. Nevertheless, Angela reviewed the Agreement, initialed and signed it in the spaces designated "Renter," and provided her credit card in payment of the rental charges. Westfall then accompanied Angela outside, where the latter walked around the rental vehicle to examine it. She then signed the portion of the Agreement indicating the vehicle was in good condition. Angela departed the Enterprise lot driving the rental vehicle and Virginia drove Angela's personal vehicle off the Enterprise lot.

On 20 January 2004, Virginia was driving the rented vehicle on Interstate Highway 85 while returning to Charlotte from Raleigh. She accidently collided with a vehicle owned and operated by Thomas Matthew Snodgrass, causing substantial damage to both automobiles. Angela was not in the rented vehicle at the time, and Virginia was cited by the investigating officer for her "failure to reduce speed" to avoid the collision.

Angela was the named insured under a personal automobile insurance policy ("the Policy") issued by Discovery and in effect on the date of the accident. Angela subsequently received written notification from Southern Adjusters ("Southern") on 3 March 2004 that, under the terms of the Policy, Discovery was not required to provide

her with either liability coverage for the accident or physical damage coverage for the vehicle. On 1 April 2004, Enterprise wrote Angela that she was "legally liable for [a total of $11,175.32 in] damages and other related expenses" arising out of the collision.

Enterprise filed the instant complaint 4 June 2004 in Mecklenburg County District Court, alleging Angela's "allowance of an unauthorized driver to operate the rental automobile without [the] written consent [of Enterprise] constitute[d] a breach of contract" entitling Enterprise to $11,175.32 in damages as well as counsel fees. In her 17 August 2004 Answer and Third-Party Complaint, Angela admitted she "signed and initialed" the Agreement and that "some of the information recorded" upon it "relates to her." However, Angela claimed "this action was taken by her" and "this information was provided by her" at the request of Enterprise "for the sole benefit and purpose of allowing [Westfall] to complete and process the Rental Agreement between Enterprise and [Virginia]." Angela further alleged Enterprise was "aware [she] only intended to guarant[ee] payment by [Virginia] of the rental fees under the Rental Agreement," and denied she was the "Renter as defined by the Rental Agreement." By third-party cross-claims Angela asserted, *inter alia*, that Virginia's negligence caused the collision, that Discovery had a duty to defend Angela in the action, and that Angela was entitled to indemnity from both Discovery and Virginia. On 15 October 2004, Enterprise filed its Answer to the third-party complaint, denying the material allegations thereof and seeking transfer of the matter to superior court.

Subsequent to a January 2004 entry of default judgment against Virginia, the case was ordered transferred to Mecklenburg County Superior Court on 2 February 2005. A hearing was conducted 15 March 2005. The trial court thereafter entered the Order granting Discovery's motion for summary judgment and denying that of Angela, concluding "there exists no genuine issue of material fact regarding [Discovery's] insurance policy" and Discovery "has no coverage for th[e] accident and no duty to defend." Angela appeals.

[1] Prior to reviewing the contentions of the parties, we note the instant appeal is interlocutory in that other claims remain outstanding in the trial court, notwithstanding dismissal of all claims involving Discovery by virtue of the Order. In *Lambe Realty Inv., Inc. v. Allstate Ins. Co.*, 137 N.C. App. 1, 4, 527 S.E.2d 328, 331 (2000), however, this Court stated:

the duty to defend involves a substantial right to both the insured and the insurer. Accordingly, we conclude that the order of partial summary judgment on the issue of whether [the insurer] has a duty to defend [the insured] in the underlying action affects a substantial right that might be lost absent immediate appeal.

(citations and quotation marks omitted). Angela's appeal therefore is properly before us.

[2] Angela argues the trial court erred in granting summary judgment in favor of Discovery. She insists genuine issues of material fact remain regarding both the question of coverage and Discovery's duty to defend under the Policy. Angela's arguments are unpersuasive.

"In reviewing the propriety of summary judgment, the appellate court is restricted to assessing the record before it." *Waste Management of Carolinas, Inc. v. Peerless Ins. Co.*, 315 N.C. 688, 690, 340 S.E.2d 374, 377 (citation omitted), *reh'g denied*, 316 N.C. 386, 346 S.E.2d 134 (1986). "If on the basis of that record it is clear that no genuine issue of material fact existed and that the movant was entitled to judgment as a matter of law, summary judgment was appropriately granted." *Id.* at 690, 340 S.E.2d at 377 (citation omitted).

Regarding the correlation between the provisions of an insurance policy and the insurer's duty to defend its insured, our Supreme Court has previously stated that

[g]enerally speaking, the insurer's duty to defend the insured is broader than its obligation to pay damages incurred by events covered by a particular policy. An insurer's duty to defend is ordinarily measured by the facts as alleged in the pleadings; its duty to pay is measured by the facts ultimately determined at trial. When the pleadings state facts demonstrating that the alleged injury is covered by the policy, then the insurer has a duty to defend, whether or not the insured is ultimately liable. Conversely, when the pleadings allege facts indicating that the event in question is not covered, and the insurer has no knowledge that the facts are otherwise, then it is not bound to defend.

*Id.* at 691, 340 S.E.2d at 377 (citations and footnotes omitted).

"An insurance policy is a contract and, unless overridden by statute, its provisions govern the rights and duties of the parties thereto." *Brown v. Lumbermens Mut. Casualty Co.*, 326 N.C. 387,

392, 390 S.E.2d 150, 153 (1990) (citation omitted). "As with all contracts, the goal of construction is to arrive at the intent of the parties when the policy was issued." *Woods v. Insurance Co.*, 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978). "Any ambiguity in the policy language must be resolved against the insurance company and in favor of the insured." *Brown*, 326 N.C. at 392, 390 S.E.2d at 153 (citation omitted). However,

> [n]o ambiguity . . . exists unless, in the opinion of the court, the language of the policy is fairly and reasonably susceptible to either of the constructions for which the parties contend. If it is not, the court must enforce the contract as the parties have made it and may not, under the guise of interpreting an ambiguous provision, remake the contract and impose liability upon the company which it did not assume and for which the policyholder did not pay.

*Trust Co. v. Insurance Co.*, 276 N.C. 348, 354, 172 S.E.2d 518, 522 (1970) (citation omitted). Bearing these principles in mind, we proceed to an examination of the Policy to determine whether the trial court properly granted summary judgment on the issues of coverage and duty to defend.

Part A of the Policy, entitled "Liability Coverage," provides in pertinent part as follows:

**INSURING AGREEMENT**

We will pay damages for **bodily injury** or **property damage** for which **any insured** becomes legally responsible because of an auto accident. . . . We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. . . . We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

. . . .

**EXCLUSIONS**

A. We do not provide Liability Coverage for any **Insured**:

. . . .

> 3. For **property damage** to property:
>
> a. rented to;
>
> b. used by; or

> c. in the care of;
> that **insured**. . . .

(emphasis in all policy provisions cited herein in original).

Therefore, according to the express terms of the Policy, Discovery has no duty to defend Angela in any suit for property damage not covered under the Policy. More specifically, damage to property rented to the insured is excluded from coverage. Notwithstanding the foregoing, Angela baldly asserts "there remains the possibility that [she] would not be found the renter [of the vehicle damaged in the collision], in which case the exclusion [of the Policy] would not apply" and Discovery "would have a duty to defend [her] pursuant to *Part A* of the Policy. This argument is without merit.

As detailed above, coverage under the "Insuring Agreement" is expressly limited to "**property damage** for which any **insured** becomes legally responsible because of an auto accident." Part A defines the term "**insured**" in pertinent part as follows:

> 1. You or any **family member** for the ownership maintenance or use of any auto or **trailer**.

According to the "Definitions" section of the Policy, the term "**family member**" means "a person related to you by blood, marriage or adoption who is a resident of your household."

It is uncontradicted in the record that Virginia is not a resident of Angela's household even though the two are related by marriage. Virginia therefore does not meet the Policy definition of a "family member."

In her sworn affidavit, Westfall states she "erase[d] Virginia's information" from the Agreement, including Virginia's address and home phone number, and thereafter filled in Angela's own "information." More significantly, affidavits of service filed by Angela prior to the summary judgment hearing indicate Virginia resided at two separate addresses in 2004, neither of which correspond to Angela's home address. Further, in her response to Discovery's interrogatories and requests for information, Angela provides an address different from her own when asked to "list the residential address for [] Virginia Williams as of January 20, 2004[,]" the date of the accident. Accordingly, even assuming *arguendo* that Virginia qualified as "renter" of the vehicle, Discovery would be under no duty to defend a suit against Angela because Virginia, not "a resident of

[Angela's] household," would not qualify as a covered "insured" under the Policy.

In similar vein, Angela claims the language of the "Insuring Agreement" limiting Discovery's duty to defend to "any suit or . . . claim for . . . **property damage** . . . covered under" the Policy "[a]t best . . . creates an ambiguity when read with the immediately preceding affirmative promise to settle or defend all suits asking for property damages because of an accident." However, although "[t]he fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is at best, ambiguous," *St. Paul Fire & Marine Ins. Co. v. Freeman-White Assoc., Inc.*, 322 N.C. 77, 83, 366 S.E.2d 480, 484 (1988), "ambiguity . . . is not established by the mere fact that the plaintiff makes a claim based upon a construction of its language which the company asserts is not its meaning." *Trust Co.*, 276 N.C. at 354, 172 S.E.2d at 522.

Here, we are not persuaded the Policy is ambiguous merely because Discovery promises to defend suits seeking property damages in one sentence and then qualifies that duty in another sentence, both of which appear in the same paragraph and under the same contextual heading. To hold otherwise would violate general principles of insurance policy construction, which require courts to "construe[] [insurance policies] as a whole, giving effect to each clause, if possible." *Chavis v. Southern Life Ins. Co.*, 76 N.C. App. 481, 484, 333 S.E.2d 559, 561 (1985) (citation omitted), *aff'd*, 318 N.C. 259, 347 S.E.2d 425 (1986); *see Woods*, 295 N.C. at 506, 246 S.E.2d at 777 ("The various terms of the policy are to be harmoniously construed, and if possible, every word and every provision is to be given effect."). Accordingly, we reject Angela's assertion that the Policy is ambiguous on its face.

Lastly, Angela contends Part D of the Policy provides coverage for damages to the rented vehicle irrespective of the exclusion for rented property set forth in Part A. Part D of the Policy, entitled "Coverage For Damage To Your Auto," reads as follows:

> We will pay for direct and accidental loss to **your covered auto** or any **non-owned auto**, including their equipment. . . .

Citing the foregoing language, Angela reasons the rented vehicle was a "non-owned auto" for the purposes of coverage and that Discovery thus had a duty to defend the suit against her and pro-

vide coverage for Enterprise's damages. Angela's contention misses the mark.

"Automobile liability policies that provide coverage for non-owned autos are intended to provide coverage to a driver without additional premiums, for the occasional or infrequent driving of an automobile other than his own." *Nationwide Mut. Ins. Co. v. Walters*, 142 N.C. App. 183, 188, 541 S.E.2d 773, 776 (2001) (citation and quotation marks omitted). Here, Part D of the Policy defines "**Non-owned auto**" in pertinent part as follows:

1. Any private passenger auto, station wagon type, pickup truck, van or trailer not owned by or furnished or available for the regular use of you or any **family member** while in the custody of or being operated by you or any **family member**.

Although conceding she was neither the operator of nor a passenger in the rented vehicle at the time of the collision, Angela insists the vehicle was "in [her] custody" for the purpose of Part D. Angela is mistaken.

It is well established that "[i]n construing an insurance policy, 'nontechnical words, not defined in the policy, are to be given the same meaning they usually receive in ordinary speech, unless the context requires otherwise.' " *Brown*, 326 N.C. at 392, 390 S.E.2d at 153 (quoting *Grant v. Insurance Co.*, 295 N.C. 39, 42, 243 S.E.2d 894, 897 (1978)). Here, the term "custody" is not defined in the Policy. Turning then to the " 'meaning [the term would] usually receive in ordinary speech,' " *Brown*, 326 N.C. at 392, 243 S.E.2d at 153 (citation omitted), we note Merriam-Webster's Dictionary defines the noun "custody" as "immediate charge and control (as over a ward or a suspect) exercised by a person or an authority." *Merriam-Webster's Collegiate Dictionary* (10th ed. 1998).

Under the facts of this case, Angela did not have "immediate charge" or "control" over the rented automobile at the time of the collision, as it is undisputed that she was neither driver nor passenger. Indeed, the vehicle was being operated by Virginia on Interstate Highway 85. Further, despite Angela's contention to the contrary, giving the term "custody" the above-quoted meaning does not "make[] the or being operated by portion of the definition superfluous" or fail to give "every word and every provision [of the policy] effect," *Woods*, 295 N.C. at 506, 246 S.E.2d at 777. Indeed, had the vehicle actually been operated by Angela at the time of the collision, arguably it would qualify as a "non-owned auto" under the Policy. Our applica-

tion of the general meaning of the term "custody" found in the Policy merely anticipates such instances in which a non-owned auto is "not being operated" by an insured or its "family member," but rather is in the "immediate charge" or "control" of the insured or family member. *See Id.* (in construing the terms of an insurance policy, "the various terms of the policy are to be harmoniously construed").

In sum, after reviewing the pertinent case law and provisions of the Policy, we conclude no genuine issue of material fact remains regarding whether Discovery was required to provide coverage to Angela or defend her against the suit by Enterprise. Accordingly, the trial court did not err in granting summary judgment in favor of Discovery.

Affirmed.

Judges BRYANT and CALABRIA concur.