226 P.3d 175 (2010)
Norman BLACK; Janis Warner; Cecelia Black; and Lester Black, Appellants,
v.
NATIONAL MERIT INSURANCE COMPANY, a domestic insurer and Washington corporation, Respondent, and
Tracey Radcliffe, Defendant.
No. 62979-4-I.
Court of Appeals of Washington, Division 1.
March 1, 2010.
*177 Ralph James Brindley, David Merritt Beninger, Luvera Barnett Brindley Beninger et al., Seattle, WA, for Appellants.
Patrick S. Brady, Carl E. Forsberg, Forsberg & Umlauf PS, Seattle, WA, for Defendant/Respondent.
COX, J.
¶ 1 Norman Black, Janis Warner, Cecilia Black, and Lester Black appeal the summary dismissal of their claims based on an automobile insurance policy issued by National Merit Insurance Company. The Blacks[1] have failed in their burden to show that they are entitled to the benefits of insureds under the liability coverage provisions of the policy. We affirm.
¶ 2 The facts are not in dispute. The Blacks were severely injured when their car collided with a pickup truck driven by Marissa Goodell, a teenager. Tracey Radcliffe was one of three teenage passengers in Goodell's pickup when it collided with the Blacks' car. Goodell died at the scene of the accident.
¶ 3 According to the police report, the accident occurred as a result of Goodell speeding and executing an unsafe passing maneuver. Radcliffe was sitting in the front passenger seat when the accident occurred. None of the law enforcement reportswhich include police reports, tests and reenactments, and multiple witness interviews show that Radcliffe touched the wheel of the pick-up truck or in any other way affected Goodell's driving.
¶ 4 At the time of the accident, Radcliffe's parents, Strider and Renee Klusman, were the named insureds under an automobile insurance policy issued by National Merit. Under the provisions of that policy that are relevant to this appeal, liability coverage existed for the Klusmans and any "family member," subject to the terms and conditions of that policy.
¶ 5 The Blacks sued Radcliffe and the other passengers riding in Goodell's pickup at the time of the accident. They claimed that Goodell and the passengers were joint tortfeasors.
¶ 6 Following mediation in 2006, Radcliffe settled with the Blacks. As part of that settlement, Radcliffe assigned to them her rights, claims, and causes of action against National Merit based on the Klusmans' automobile insurance policy. The Blacks then demanded payment of the liability limits of the National Merit policy.
¶ 7 National Merit declined the demand and moved for partial summary judgment against the Blacks and Radcliffe on the issue of liability coverage. In reply, the Blacks sought a determination that coverage existed. The trial court granted National Merit's motion.
¶ 8 The Blacks appeal.[2]

LIABILITY COVERAGE
¶ 9 The Blacks argue that liability coverage exists under the policy and that the trial court erred by granting National Merit's motion for partial summary judgment. Because the Blacks fail in their burden to show that they are entitled to the benefits of insureds under the liability coverage provisions of the policy, we disagree.
¶ 10 A motion for summary judgment is proper only when the pleadings, affidavits, depositions, and admissions on file, viewed in a light most favorable to the nonmoving party, demonstrate that no issue of material fact *178 exists, and the moving party is entitled to a judgment as a matter of law.[3]
¶ 11 Courts construe insurance policies as contracts.[4] "The court considers the policy as a whole, and gives it a `fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'"[5] If the policy language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists.[6]
¶ 12 A clause in an insurance policy is only ambiguous when, "`on its face, it is fairly susceptible to two different interpretations, both of which are reasonable.'"[7]
¶ 13 If a term is defined in a policy, then the term will be interpreted in accordance with that policy definition.[8] If a policy term is not defined, then it will be given its "`plain, ordinary, and popular' meaning."[9] If a term in a policy is undefined, courts may look to the dictionary to determine the common meaning.[10] However, to be meaningful, dictionary definitions must be regarded in the context of the particular insurance policy.[11]
¶ 14 To determine whether liability coverage exists, the court engages in a two-step process.[12] "The insured must show the loss falls within the scope of the policy's insured losses. To avoid coverage, the insurer must then show the loss is excluded by specific policy language."[13]
¶ 15 Interpretation of insurance contracts is a question of law, which this court reviews de novo.[14] Likewise, we review de novo summary judgment orders.[15]
¶ 16 Under the National Merit policy, liability coverage is provided when a "covered person" becomes legally responsible for bodily injury or property damages because of an auto accident. The liability coverage section of the policy provides two alternative definitions of a "covered person":
1. You or any family member with respect to the ownership, maintenance or use of any covered auto or trailer.
2. Any person using your covered auto.[[16]]
¶ 17 Under the first of the above definitions, it is undisputed that Radcliffe was a "family member" under the policy and that she was "using"[17] the Goodell "auto"[18] at the *179 time of the accident. Likewise, there is no dispute that she was a "person" for purposes of the second of the above definitions of the policy.
¶ 18 The Blacks, as assignees of Radcliffe's interests, were therefore required to show that under the remaining terms of either definition Radcliffe is a "covered person." Specifically, did this claim fall within the scope of "any covered auto" in the first definition of "covered person"? Alternatively, did this claim fall within the scope of "your covered auto" in the second definition of "covered person"?

Interpretation of "Any Covered Auto"
¶ 19 The Blacks first argue that Radcliffe is a "covered person" under the first definition of that phrase because the Goodell vehicle in which she was riding as a passenger qualifies as "any covered auto." According to the Blacks, the Goodell vehicle qualifies as "any covered auto" because it "had liability insurance protection," albeit under a policy issued by another insurer. This is not a persuasive argument.
¶ 20 "When interpreting a contract our primary goal is to discern the intent of the parties, and such intent must be discovered from viewing the contract as a whole."[19] "In the absence of anything in the context of a contract clearly indicating a contrary intent, when the same word is used in different parts of the contract, it will be presumed to be used in the same sense throughout the contract."[20] According to the rules of insurance policy interpretation, a policy term that is not defined should be given its "`plain, ordinary, and popular' meaning."[21] However, as this court has noted, dictionary definitions must be viewed in context.[22] "The contract should be given a practical and reasonable rather than a literal interpretation; it should not be given a strained or forced construction which would lead to an extension or restriction of the policy beyond what is fairly within its terms."[23]
¶ 21 Here, the words "any covered auto" appear in boldface type in the first definition of a "covered person."[24] As National Merit indicated below, this suggests that there should be a corresponding definition elsewhere in the insurance policy.[25] But there is no such definition anywhere in the policy. In fact, the words "any covered auto" appear nowhere else in the policy.
¶ 22 Using two Internet dictionary definitions of "cover"[26] that equate "covered" with "insured," the Blacks argue that "any covered auto" should be interpreted as "any auto that ha[s] liability insurance protection."[27] Based on this reading, they conclude that the Goodell auto is a "covered auto" because it was insured by a Pemco insurance policy at the time of the accident.
¶ 23 It is appropriate for a court to consult a standard English dictionary in interpreting undefined terms.[28] However, we must view dictionary definitions in context.[29] Accordingly, our task is to view dictionary definitions of the words we interpret in the context of the National Merit insurance policy.
*180 ¶ 24 This policy uses the word "covered" in several ways.[30] But it never uses the word to refer to any policy other than the National Merit policy at issue in this case. For example, under the policy, a "covered person" is someone who is insured under this policy.[31] "Your covered auto" is a vehicle that is provided insurance under this policy.[32] In short, the word "covered," considered in the context of this policy, is most reasonably interpreted as insured under the National Merit policy before us.
¶ 25 The Blacks' interpretation would produce odd results. For example, if "covered auto" in the two definitions of "covered person" in the insuring provisions of the policy means any insured vehicle, National Merit took on risk for the universe of insured vehicles. This includes risk for those vehicles insured by it as well as those insured by others. No purchaser of insurance could reasonably interpret this provision as one in which National Merit contracted to take on risk for all vehicles insured by any insurance carrier. We conclude that such a reading is unreasonable.
¶ 26 To buttress their argument, the Blacks argue that the "other insurance" provision in the liability coverage section of National Merit's policy contemplates that the Goodell vehicle could be covered by a policy issued by another insurer, in this case Pemco. This observation does nothing to advance their argument.
¶ 27 First, for coverage under an insurance policy to exist, the insured must show that the "loss falls within the scope of the policy's insured losses."[33] The proper interpretation of "covered person" under the insuring provisions of the National Merit policy is at issue here. Thus, whether the "other insurance" provision of the policy contemplates multiple policies insuring the same vehicle does nothing to assist us in interpreting the insuring provisions of this policy.
¶ 28 Second, "other insurance" clauses are standard in most automobile in insurance contracts.[34] These clauses are intended to allocate costs between multiple insurance companies where more than one policy applies.[35] The Blacks fail to cite any authority for their novel proposition that the "other insurance" provision in this policy serves an additional purpose: defining "covered person" under the insuring provisions of the policy.
¶ 29 We conclude that the Blacks have failed in their burden to show that Radcliffe is entitled to the benefits of a "covered person" under the first of the definitions in the insuring provisions of the policy.

Interpretation of "Non-owned Auto"
¶ 30 Alternatively, the Blacks argue that Radcliffe is a "covered person" under the policy's second definition. They base this claim on their assertion that the Goodell vehicle qualifies as "your covered auto" under the last of five numbered definitions of that phrase in the policy. We disagree.
¶ 31 The National Merit policy defines "Your covered auto" as follows:
1. Any vehicles you own shown on the Declarations Page.
2. Any of the following types of vehicles on the date you become the owner, whether operational or not:
a. a private passenger auto;
b. a pick-up, van or panel truck:

*181 (1) that is not used as a commercial vehicle for the delivery or transportation of goods or materials unless such use is:
(a) incidental to your business of installing, maintaining, or repairing furnishings or equipment; or
(b) for farming or ranching;
c. a motorhome or trailer.
¶ 32 If the vehicle you acquire:
a. replaces one shown on the Declarations Page, it will have the same coverage as the vehicle it replaces; or
b. is in addition to any shown on the Declarations Page, it will have the broadest coverage we now provide for any vehicle shown on the Declarations Page.
This provision applies only if you ask us to insure it within 30 days after you become the owner.
3. Any trailer you own.
4. Any temporary substitute auto which is an auto or trailer you do not own while used as a temporary substitute for any other vehicle described in definitions 1, 2, or 3 above which is out of normal use because of its breakdown, repair, servicing, loss or destruction.
5. Any non-owned auto which is a private passenger auto, a pick-up, van or panel truck, motorhome, or trailer not owned by you or a family member or furnished or available for regular use while in your custody, possession, or being operated by you or any family member.[[36]]
¶ 33 The second definition of "covered person" in the insuring provisions of the policy is "Any person using your covered auto." The issue is whether the Goodell vehicle qualifies as "your covered auto" under this definition.
¶ 34 We note that the first three categories of vehicles that are within the definition share the common element of ownership by the named insureds: any vehicle that they "own shown on the declarations page," any specified vehicle on the date they "become the owner," or any trailer they "own."
¶ 35 The fourth category includes any "temporary substitute" for vehicles within the first three categories, subject to the specified conditions in the fourth category. In short, temporary substitutes for vehicles owned by the named insureds are covered.
¶ 36 The fifth category, which is the sole category on which the Blacks rely for this alternative argument, defines when "any non-owned auto" qualifies as "your covered auto" under the policy:
Any non-owned auto which is a private passenger auto, a pick-up, van or panel truck, motorhome, or trailer not owned by you or any family member or furnished or available for regular use while in your custody, possession, or being operated by you or any family member.
¶ 37 The Blacks claim that Radcliffe was a "covered person" under the National Merit policy "Because She Did Not Own the [Goodell] Vehicle She Was Using at the Time of the Accident."[37] Although Radcliffe did not own the Goodell vehicle that she was using at the time of the accident, these facts are insufficient to establish coverage.
¶ 38 The Blacks primarily base their argument on the word "or" in the above definition, which they characterize as disjunctive.[38] They claim this word creates multiple possible definitions for a "non-owned auto."[39] They also claim that the multiple possible definitions create ambiguities that must be resolved in favor of coverage for the insured.
¶ 39 The Blacks provide several alternative examples to illustrate their interpretation of a non-owned auto under the policy:
1. Any auto "not owned" by the named insured [the Klusmans]; or
2. Any auto "not owned by ... a family member [the Klusmans' family]"; or

*182 3. Any auto "not furnished or available for regular use."
On the basis of the above alternative interpretations, the Blacks claim that the Goodell vehicle qualifies as "your covered auto" under the second definition of "covered person" in the insuring provisions of the National Merit policy.
¶ 40 We conclude that these interpretations are not reasonable. They all suffer from the same problem. Each includes autos with no ties to this National Merit policy.
¶ 41 For example, there is a near universe of autos that are "not owned" either by the named insureds or their family members. Yet the first two of the above interpretations lead to the conclusion that the National Merit policy covers all such autos. Likewise, there is a near universe of vehicles that are "not furnished or available for [the] regular use" of the name insureds or their family members under the third interpretation.
¶ 42 As we explained when we considered the Blacks' first argument, any interpretation that National Merit took on risk for a near universe of vehicles is not a reasonable reading of this policy. The same rule applies here. We reject the interpretations that the Blacks offer because no purchaser of insurance could reasonably read the policy in the manner they argue.
¶ 43 Although we reject their alternative interpretations, we still must interpret this provision. We start with an examination of the word "or," as used in the definition.
¶ 44 Conventions of statutory interpretation dictate that courts need not interpret every "or" as disjunctive.[40] The same is also true of contract interpretation.[41] "`[C]ourts need not mechanically interpret every `or' as disjunctive, but rather ... courts should interpret the word `or' according to context.'"[42]
¶ 45 "Or" is most commonly used in the disjunctive and employed to indicate an alternative.[43] But Brian Garner, editor of Black's Law Dictionary, points out in his work, A Dictionary of American Usage, that this is not always the case. For example, while "A or B" is disjunctive, "not A or B" is conjunctive and means the same thing as "not A nor B."[44] Thus, "[n]ot A nor B" means the same thing as "not A and not B." By way of illustration, "I would not do it for love or money" means the same things as "I would not do it for love and I would not do it for money."
¶ 46 When we apply this principle to the "non-owned auto" definition here, the most reasonable interpretation is that it states a conjunctive rather than a disjunctive list of requirements:
Any non-owned auto which is a private passenger auto ... not owned by you or a family member [nor] furnished or available for regular use while in your custody, possession, or being operated by you or any family member.[[45]]
¶ 47 The remaining issue is to determine what is modified by the clause "while in your *183 custody, possession, or being operated by you or any family member" in the definition.
¶ 48 The Blacks argue that this clause only modifies the clause immediately preceding it: "furnished or available for regular use." National Merit, on the other hand, argues that the clause is not limited to modifying the immediately preceding clause. We agree with National Merit.
¶ 49 Modifying clauses are typically attached to the last antecedent in a list and not to earlier items, unless a comma before the modifying phrase indicates that it applies to all antecedents.[46] Washington courts do not apply the last antecedent rule inflexibly or take it as always binding.[47]
¶ 50 Our task is to ascertain and effectuate the parties' intentions whenever possible, not to police and critique grammar.[48] Thus, we are required to ask whether the contract, when viewed as a whole, is "clear and unambiguous."[49] If it is, we are required to enforce the contract "in its plain, ordinary, and popular" sense as a matter of law.[50] Ambiguity only exists where a policy provision is, on its face, "fairly susceptible to two different interpretations, both of which are reasonable."[51] Courts may not create an ambiguity where none exists.[52]
¶ 51 Here, if we strictly apply the last antecedent rule, the clause "while in your custody, possession, or being operated by you or any family member" would apply only to the immediately preceding clause: "furnished or available for regular use." This would result in "your covered auto" including "all autos not owned by [the named insured] or a family member." As we have already explained, such an interpretation is not reasonable.
¶ 52 Our interpretation is consistent with most non-owned auto clauses. Most policies that provide coverage for non-owned vehicles exclude coverage for vehicles that are owned by the named insured or a family member and vehicles that are "furnished or available for regular use by the named insured or a family member."[53] In addition, automobile liability policies "frequently specif[y] additional requirements for coverage of non-owned vehicles. These requirements may focus on ... the vehicle type, the ownership of the vehicle, the frequency of use of the vehicle, the identity of the person using the vehicle, the use to which it was put, and a host of other subissues."[54]
¶ 53 There are additional reasons why we reject the Blacks' argument. First, the clause "while in your custody, possession, or being operated by you or any family member" does not follow a list of multiple alternatives as they suggest. Rather, it follows a set of required conditions that are joined by the word "or" used as a conjunctive negative. A "non-owned auto" is any auto "not owned by you or a family member [and not] furnished or available for regular use while in your custody, possession, or being operated by you or any family member."[55]
¶ 54 The last antecedent rule generally applies to a modifying clause that follows a list of alternatives. Here, the modifying clause follows two requirements that are not separated by any punctuation. The lack of a comma between "not owned by you or any family member" and "or furnished or available for regular use" indicates that the following modifying clause is intended to apply to both requirements.
*184 ¶ 55 Second, the Blacks' proposed reading of the "non-owned auto" clause is inconsistent with the surrounding contract language. The definition of "your covered auto" includes five categories of vehicles. The first four categories require a direct connection to the policy holder. The fifth category, which is at issue here, provides coverage, according to the Blacks, for all non-owned vehicles that have no connection to the policy holder. The Blacks' proposed reading is inconsistent with the personal connection required by the other four definitions of "your covered auto." In context, their interpretation of the fifth definition is unreasonable.
¶ 56 Our reading of this provision is consistent with interpretations of similar provisions by other courts. Two North Carolina courts have interpreted a similar "non-owned auto" clause and have found both a negative and a positive requirement.
¶ 57 In Progressive American Insurance Co. v. State Farm,[56] two potentially applicable insurance policies both defined a "non-owned auto" as:
Any private passenger auto, station wagon type, pickup truck, van or trailer not owned by or furnished or available for the regular use of you or any family member while in the custody of or being operated by you or any family member.[[57]]
¶ 58 There, the court found that the auto in question did not qualify as a non-owned auto under either policy because it did not satisfy the negative condition: the auto was owned by one policy holder and furnished for the regular use of the other policy holder.[58]
¶ 59 In Enterprise Leasing Co. v. Williams,[59] the applicable policy defined a "non-owned auto" identically to the policies in Progressive American.[60] There, the court found that an auto did satisfy the negative condition.[61] It was a rental car, so it was not owned by the policy holder or regularly available for his use.[62] However, it did not qualify as a non-owned auto because it did not satisfy the positive condition: it was not in the custody of, or being operated by, the policy holder or a family member.[63]
¶ 60 The Blacks argue that tying coverage to an insured's infrequent use is sufficient positive connection to prevent unlimited liability concerns. But "your covered auto" is defined in the general definitions section of the policy. Thus, the Blacks' proffered reading of the "non-owned auto" clause makes any auto not owned by the named insureds "your covered auto" for purposes of the entire insurance policy, not just the liability section.[64]
¶ 61 For example, the Damage to Your Auto Coverage section of National Merit's policy provides coverage under the following circumstances:
We will pay for direct and accidental loss to your covered auto, including its equipment, minus any applicable deductible stated on the Declarations Page.
¶ 62 If the Blacks' proposed definition of "non-owned auto" is applied to this section, the result would be damage coverage for direct or accidental loss to any vehicle not owned by the policy holders, not available for their regular use, and not in their custody or possession. In short, National Merit would be required to provide damage coverage for virtually every automobile in the world. No purchaser of insurance could reasonably interpret the policy in this way.
¶ 63 The Blacks characterize their interpretation as at least sufficiently plausible to create an ambiguity about the policy's meaning. We do not agree.
*185 ¶ 64 A clause in an insurance policy is only ambiguous when, on its face, "it is fairly susceptible to two different interpretations, both of which are reasonable."[65]
¶ 65 Here, the interpretations offered by the Blacks are not reasonable for the reasons we have explained. The only reasonable interpretation of the "non-owned auto clause" involves two separate requirements, one negative (not owned or available for regular use) and one positive (in your custody, possession, or being operated by the named insureds or a family member). The Goodell auto meets the first requirement: it was not owned by the named insureds or a family member or available for their regular use. However, the Goodell auto does not meet the second requirement: it was not in the custody or possession of the named insureds or being operated by the named insureds or a family member. Because there is no ambiguity, there is no reason to apply the rule that ambiguities should be construed against the drafter of the policy, and no rule permits us to ignore the plain language of the policy.[66]
¶ 66 The Blacks also argue that National Merit's CR 30(b)(6) representatives admitted that there are numerous alternative definitions of a "non-owned auto" under the policy. They argue that these admissions by National Merit's representatives are relevant in interpreting the policy.
¶ 67 While the deposition testimony of National Merit's representatives may be relevant in interpreting the policy, nothing contained in either deposition affects our analysis here. Both National Merit representatives repeatedly asserted that they assessed whether the policy provided coverage under the "non-owned auto" clause by looking at the entire clause in the context of the policy. Neither representative ever suggested that fulfilling only the negative condition (not owned or furnished) was sufficient for an auto to qualify for coverage under the "non-owned auto" clause.
¶ 68 For the first time in their reply brief, the Blacks argue that the non-owned auto clause violates public policy. Arguments raised for the first time in a reply brief are not generally addressed.[67] We decline to address this argument because it was first raised in the reply brief, not the opening brief.
¶ 69 We affirm the summary judgment order.
WE CONCUR: LEACH and APPELWICK, JJ.
NOTES
[1] We adopt the naming convention used by the plaintiffs in their briefing. The Blacks include Janis Warner.
[2] Radcliffe is not a party to this appeal.
[3] Culp v. Allstate Ins. Co., 81 Wash.App. 664, 667, 915 P.2d 1166, review denied, 130 Wash.2d 1009, 928 P.2d 412 (1996) (citing CR 56(c)); Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982).
[4] Australia Unlimited, Inc. v. Hartford Cas. Ins. Co., 147 Wash.App. 758, 765, 198 P.3d 514 (2008).
[5] Id. (quoting Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wash.2d 654, 666, 15 P.3d 115 (2000)).
[6] Id. (quoting Quadrant Corp. v. Am. States Ins. Co., 154 Wash.2d 165, 171, 110 P.3d 733 (2005)).
[7] Holden v. Farmers Ins. Co. of Wash., 142 Wash. App. 745, 749, 175 P.3d 601 (2008) (quoting Greer v. NW Nat'l Ins. Co., 109 Wash.2d 191, 198, 743 P.2d 1244 (1987)).
[8] S & K Motors, Inc. v. Harco Nat'l Ins. Co., 151 Wash.App. 633, 639, 213 P.3d 630 (2009).
[9] Boeing Co. v. Aetna Cas. & Sur. Co., 113 Wash.2d 869, 877, 784 P.2d 507 (1990) (quoting Farmers Ins. Co. v. Miller, 87 Wash.2d 70, 73, 549 P.2d 9 (1976)).
[10] Matthews v. Penn-America Ins. Co., 106 Wash. App. 745, 748, 25 P.3d 451 (2001), review denied, 145 Wash.2d 1019, 41 P.3d 485 (2002).
[11] Id. at 751, 25 P.3d 451.
[12] McDonald v. State Farm Fire & Cas. Co., 119 Wash.2d 724, 731, 837 P.2d 1000 (1992).
[13] Id.
[14] Culp, 81 Wash.App. at 667, 915 P.2d 1166 (citing Pub. Util. Dist. No. 1 v. Int'l Ins. Co., 124 Wash.2d 789, 797, 881 P.2d 1020 (1994); Mut. of Enumclaw Ins. Co. v. Jerome, 122 Wash.2d 157, 160, 856 P.2d 1095 (1993)).
[15] Folsom v. Burger King, 135 Wash.2d 658, 663, 958 P.2d 301 (1998).
[16] Clerk's Papers at 67 (emphasis in original).
[17] See Butzberger v. Foster, 151 Wash.2d 396, 402-08, 89 P.3d 689 (2004) (discussing, in the context of uninsured motorist coverage, the four part test Washington courts apply to determine whether an insured was "using a vehicle").
[18] See Clerk's Papers at 65 (the definitions section of the National Merit policy defines "auto" as "a private passenger vehicle having four wheels on the road.").
[19] Weyerhaeuser Co., 142 Wash.2d at 669, 15 P.3d 115.
[20] Holter v. Nat'l Union Fire Ins. Co., 1 Wash. App. 46, 50, 459 P.2d 61 (1969).
[21] Boeing Co., 113 Wash.2d at 877, 784 P.2d 507.
[22] Matthews, 106 Wash.App. at 751, 25 P.3d 451.
[23] Morgan v. Prudential Ins. Co. of Am., 86 Wash.2d 432, 434, 545 P.2d 1193 (1976).
[24] Clerk's Papers at 67 ("Any family member with respect to the ... use of any covered auto.").
[25] Clerk's Papers at 271 (National Merit's designated CR 30(b)(6) representative testified at his deposition that boldface terms in the insurance policy should have a corresponding definition).
[26] Opening Brief of Appellants at 19-20.
[27] Id.
[28] Lynott v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 123 Wash.2d 678 691, 871 P.2d 146 (1994).
[29] Matthews, 106 Wash.App. at 751, 25 P.3d 451.
[30] See Clerk's Papers at 330-43 ("Coverage," "liability coverage," "covered person," "any covered auto," "your covered auto," and other similar terms appear throughout the National Merit policy.).
[31] Id. at 333.
[32] Id. at 332.
[33] McDonald, 119 Wash.2d at 731, 837 P.2d 1000.
[34] Lee R. Russ, Couch on Insurance § 219:27 (3d ed. 2009) ("Policies of property, automobile, and commercial general liability insurance commonly contain pro rata provisions.").
[35] Id. ("Though [other insurance] clauses may be worded differently, in their essence, they provide that where the insured has other insurance against a loss covered by the policy the insurer shall not be liable for a greater proportion of such loss than the applicable limit of liability stated therein bears to the total applicable limit of liability of all insurance against such loss.").
[36] Clerk's Papers at 66 (emphasis in original).
[37] Opening Brief of Appellants at 21-23.
[38] Id. 21-23.
[39] Id. at 23-24.
[40] See, e.g., Union Ins. Co. v. United States, 73 U.S. (6 Wall.) 759, 764, 18 L.Ed. 879 (1867) ("[W]hen we look beyond the mere words to the obvious intent we cannot help seeing that the word `or' must be taken conjunctively."); United States v. Hodge, 321 F.3d 429, 436 (3d Cir.2003); Willis v. United States, 719 F.2d 608, 612-13 (2d Cir.1983) ("It is settled that `or' may be read to mean `and' when the context so indicates.").
[41] See Noell v. Am. Design, Inc., Profit Sharing Plan, 764 F.2d 827, 833 (11th Cir.1985) ("It is an established principal that `[t]he word "or" is frequently construed to mean "and," and vice versa, in order to carry out the evident intent of the parties.'") (quoting Dumont v. United States, 98 U.S. (8 Otto) 142, 143, 25 L.Ed. 65 (1878)); Smith v. United Television, Inc. Special Severance Plan, 474 F.3d 1033, 1037 (8th Cir.2007).
[42] United Television, 474 F.3d at 1037 (quoting Fin. Sec. Assurance, Inc. v. Stephens, Inc., 450 F.3d 1257, 1265 (11th Cir.2006) (citations omitted)).
[43] Webster's Third New International Dictionary 1585 (1969).
[44] Brian Garner, A Dictionary of American Usage at 453-54 (1998); see also Chicago Manual of Style § 5.185 at 191 (15th ed.2003) (with disjunctive conjunctions both of the statements joined by the conjunction may be false).
[45] (Emphasis added.)
[46] In re Sehome Park Care Ctr., Inc., 127 Wash.2d 774, 781-82, 903 P.2d 443 (1995).
[47] In re Pers. Restraint of Smith, 139 Wash.2d 199, 205, 986 P.2d 131 (1999).
[48] Weyerhaeuser Co., 142 Wash.2d at 695, 15 P.3d 115 (citation omitted).
[49] Transcontinental Ins. Co. v. Wash. Pub. Util., 111 Wash.2d 452, 456, 760 P.2d 337 (1988).
[50] Boeing Co., 113 Wash.2d at 877, 784 P.2d 507.
[51] Holden, 142 Wash.App. at 749, 175 P.3d 601 (emphasis added).
[52] Kitsap County v. Allstate Ins. Co., 136 Wash.2d 567, 576, 964 P.2d 1173 (1998).
[53] HARRIS, WASHINGTON INSURANCE LAW § 25.3 (2nd ed.2006).
[54] 8A, LEE R. RUSS & THOMAS F. SEGALLA, COUCH ON INSURANCE, § 118:1 (3rd ed.2005).
[55] (Emphasis added.)
[56] 184 N.C.App. 688, 647 S.E.2d 111 (2007).
[57] Id. at 694-95, 647 S.E.2d 111.
[58] Id. at 695, 647 S.E.2d 111.
[59] 177 N.C.App. 64, 627 S.E.2d 495 (2006).
[60] Id. at 72-73, 627 S.E.2d 495.
[61] Id.
[62] Id.
[63] Id.
[64] Weyerhaeuser Co., 142 Wash.2d 654, 15 P.3d 115 (the same word used in different parts of a contract will be presumed to be used in the same sense throughout the contract) (citation omitted).
[65] Holden, 142 Wash.App. at 749, 175 P.3d 601 (quoting Greer, 109 Wash.2d at 198, 743 P.2d 1244).
[66] Graoch Assocs. No. 5 Ltd. P'ship v. Titan Const. Corp., 126 Wash.App. 856, 867, 109 P.3d 830 (2005).
[67] Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 809, 828 P.2d 549 (1992); see RAP 10.3(c).