## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| JAY MERRILL, individually and as the representative of all persons similarly situated, | No. 75637-1-I |
| Appellant, | |
| v. | DIVISION ONE |
| PEMCO MUTUAL INSURANCE COMPANY and PEMCO INSURANCE COMPANY, | |
| Respondents. | UNPUBLISHED OPINION |
| | FILED: May 1, 2017 |

MANN, J. — This case involves the interpretation of a settlement agreement (settlement) reached between members of a certified class of PEMCO Insureds (class) and PEMCO Mutual Insurance Company. Jay Merrill, on behalf of the class, appeals the trial court's decision to incorporate an updated class list into the settlement for the purposes of calculating the "total repair cost payments of the class." The settlement defined the class list to be "the revised class notice list furnished to Class Counsel by the Defendants on March 31, 2015." However, both parties contemplated, and subsequently approved, adding additional claimants to the class list. We affirm the trial court's decision holding that the revised class list applies throughout the settlement.

I

On April 15, 2015, the trial court ordered the preliminarily approval of a stipulation of settlement between PEMCO and the class. The settlement required PEMCO to pay $15 million into a common settlement fund. Class members could then submit a claim to receive a pro rata share of the common settlement fund. The settlement provided for the creation of a "class list" that contained: (1) a list of all "class members," (2) the "individual class member repair cost payments" (the amount each class member actually paid for repair costs), and (3) the "total repair cost payments" (the sum of all of the individual repair costs). The settlement set up a payment formula designed to ensure that each class member would be entitled to a pro rata share of the $15 million common settlement fund after subtraction of attorney fees and expenses. Paragraph 44.2 of the settlement[1] contains the payment formula[2] and may be expressed as follows:

$$(15 \text{ mm} - \$ 4.572 \text{ mm}) \times \left( \frac{\text{Individual Class Member Repair Cost Payment}}{\text{Total Repair Cost Payments}} \right)$$

---

[1] Paragraph 44.2 Provides:

44.  Payment to eligible <u>Class Members</u> ("Settlement Payment") shall be calculated as follows:

. . . .

(2) Each Class Member who has submitted a timely Valid Claim Form and who is eligible for payment shall receive payment from Defendants to be calculated as follows:

($15,000,000.00 – attorney's fees and costs awarded to Class Counsel pursuant to Paragraph 56 and Class Representatives Service fees pursuant to paragraph 45) x (<u>Individual Class Member Repair Cost Payment</u> divided by the <u>Total Repair Cost Payments</u>).

[2] The first bracket, $15 mm — $4.572 mm, represents the common settlement fund ($15 mm) less attorney's fees and expenses ($ 4.572 mm). This number is multiplied by the fraction representing each individual member repair cost payment (the numerator) divided by the total repair costs (the denominator).

The following provisions of the settlement are significant to its construction:

9:      "Class List" means the revised class notice list furnished to Class Counsel by the Defendants on March 31, 2015.

11:     "Class Period" means the period from October 8, 2007 to March 31, 2015, inclusive.

. . . .

44.1:   Defendants will use the total amount of payments under the Collision and/or Comprehensive and/or UIM PD coverages as shown on the Class List (excluding payments to Opt Outs) as the "Total Repair Cost Payments." That amount will be the total repair costs shown for any member of the class who submits a valid exclusion request. The individual amounts listed as having been paid for each Class Member on that list shall be considered the "Individual Class Member Repair Cost Payment."

. . . .

51:     As soon as practicable after the Preliminary Approval of this Settlement the Claims Administrator shall have sent a copy of the Individual Notice and a Claim Form, by first-class mail, to each Person on the Class List.

83:     The exhibits to this Stipulation are an integral part of the Settlement and are hereby incorporated into and made a part of this Stipulation.[3]

Exhibit C to the settlement provides:

The Individual Notice shall be mailed per the Stipulation of Settlement using the Class List provided to Class Counsel on March 31, 2015 or as updated by Defendants.[4]

In February 2015, before reaching settlement, class counsel estimated that the class size was 17,607. When the parties agreed to the common settlement fund of $15 million, they did not have the March 31, 2015, class list. The class list PEMCO provided on March 31, 2015, included 17,050 class members and a total repair cost payment for those 17,050 class members of $59,132,793.10. The class list sent by PEMCO to class

---

[3] (Emphasis added.)
[4] (Emphasis added.)

counsel on March 31, 2015, was not final. As PEMCO's counsel explained: "Here is an updated list through the end of February." Because under the settlement, the "class period" extended to March 31, 2015, PEMCO's counsel informed the class counsel that PEMCO would send a revised class list as soon as the March data was gathered.

In the order granting preliminary approval of the Settlement, the trial court directed that "the Individual Notice shall be mailed per the Stipulation of Settlement using the Class List provided to Class Counsel on March 31, 2015 or as updated by Defendants."[5] At this time, both parties understood that more class members would be added to the list provided on March 31, 2015. Indeed, while class counsel believed the number of additions would be smaller, counsel conceded to the trial court that the original list was missing a month of claims and both parties contemplated the class list would be supplemented.[6]

On April 22, 2015, PEMCO e-mailed the class counsel a revised class list that included 17,873 class members. After class counsel conducted confirmatory discovery on the new list, that number was reduced to 17,863 class members. Class counsel approved the new list of 17,863 class members on May 19, 2015. As a result of the

---

[5] (Emphasis added.)

[6] As class counsel explained:

> This order, which was [Exhibit] C to the settlement and is incorporated in the settlement which you signed, the preliminary approval order, was changed for this case and it reads, "The individual notice shall be mailed per the stipulation of settlement using the class list provided to class counsel on March 31, 2015, or as updated by the defendants."
>
> So there's no doubt, your Honor, that both parties contemplated that the settlement documents themselves were changed to reflect the fact that who's in the class for purposes of the notice and for purposes of class membership might change, in fact, would change after March 31st, 2015. Mr. Phillips [PEMCO's Counsel] is absolutely correct in the sense that he told us, and his e-mail said, that when he gave us the original list on March 31st, he said this is missing a month of claims, but as he also doesn't dispute, and this is before we signed the settlement, Your Honor, the claims that were anticipated were a month of UIM claims, which would have been about 60 claims.

increased number of class members the sum of the repair costs for the 17,863 class members amounted to a total repair cost payment of $60,040,671.19. On June 20, 2015, PEMCO mailed notices to all class members on the revised class list.

On September 23, 2015, the trial court entered the "Final Judgment and Order Approving the Settlement and Dismissing Claims of Class Members with Prejudice." On October 2, 2015, PEMCO informed class counsel that they sent an additional notice to 1,395 existing class members that had two valid claims within the class period. This increase meant there was a total of 19,258 individual class member repair cost payments and a total repair cost payment of $64,577,010.19.

After the addition of the new class members to the class list, PEMCO filed a motion with the trial court to determine the proper calculation for payment to eligible class members. PEMCO argued that the settlement should add the new class members' individual class member repair cost payments to the total repair cost payment amount. Under PEMCO's position, because the denominator (total repair cost payment) in the payment formula would increase each class member would receive slightly smaller payments.

Merrill, representing the class, opposed the motion. While Merrill agreed that the claimants added after March 31, 2015, should be compensated, Merrill's position was that the payment formula denominator (total repair cost payment) should be frozen at $59,132,793.10—the amount identified in the original March 31, 2015, class list. Merrill argued that if both the number of class members total repair cost were increased, the result would be decrease in the amount received by each individual class member from

$610.99 to $559.42. Merrill contends that the settlement was not ambiguous and therefore the court should not reinterpret or modify the terms.

The trial court ruled in favor of PEMCO stating:

> I think I agree on this with Mr. Phillips [PEMCO's Counsel]. It makes more sense if you're going to increase the numerator, which I think is good, more claims, more individuals get paid. They will get paid somewhat less, but it only makes sense to increase the denominator also.

The trial court ordered, "Individual payments will be calculated in accordance with the final Class List used in sending Initial and Supplemental Notice to the class, and based on Total Repair Cost Payments of $64,523,387.26."

Merrill, on behalf of the class, appeals.

II

Merrill argues that the trial court erred in interpreting the settlement to allow the addition of new class members that were not identified in the original March 31, 2015, list. We disagree.

We review the interpretation of a settlement agreement de novo. Aguirre v. AT&T Wireless Servs., 118 Wn. App. 236, 240, 75 P.3d 603 (2003); Tyrrell v. Farmers Ins. Co. of Wash., 140 Wn.2d 129, 132-33, 994 P.2d 833 (2000).

The principles of the law of contracts apply to the review of settlement agreements. In re Estate of Harford, 86 Wn. App. 259, 262, 936 P.2d 48 (1997). Washington follows the objective manifestation theory of contracts. "Under this approach, we attempt to determine the parties' intent by focusing on the objective manifestations of the agreement, rather than on unexpressed subjective intent of the parties." Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d

-6-

262 (2005). "We generally give words in a contract their ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." Hearst, 154 Wn.2d at 504. "And we view the contract as a whole, interpreting particular language in the context of other contract provisions." Viking Bank v. Firgrove Commons 3 LLC, 183 Wn. App. 706, 713, 334 P.3d 116 (2014). If the language is clear and unambiguous, we "must enforce it as written and may not modify it or create ambiguity where none exists." Black v. Nat'l Merit Ins. Co., 154 Wn. App. 674, 679, 226 P.3d 175 (2010). Generally, "In the absence of anything in the context of a contract clearly indicating a contrary intent, when the same word is used in different parts of the contract, it will be presumed to be used in the same sense throughout the contract." Black, 154 Wn. App. at 681-82.

Merrill is correct that the term "class list" is defined in paragraph 9 of the settlement as meaning "the revised class notice list furnished to Class Counsel by the Defendants on March 31, 2015." Thus, viewed in isolation, the term class list is unambiguous. But because the term class list is used in multiple places in the settlement, we must examine the context of the settlement as a whole and presume that the term class list is used in the same sense throughout. Black, 154 Wn. App. at 681-82.

The term "class list" is used in paragraph 44.1 of the settlement to determine both the "Total Repair Cost Payments" (the denominator in the payment formula) and to identify "Individual Class Member Repair Cost Payment[s]" (the numerator in the payment formula). Merrill argues that the denominator ("Total Repair Cost Payments") is defined by reference to the class list. But Merrill ignores that the numerator

("Individual Member Repair Cost Payment") is also defined by reference to the same class list. Thus, if Merrill is correct that the class list was final on March 31, 2015, then it necessarily means that both the number of class members and the total repair cost payments must be held constant—at the amounts supported by the original March 31, 2015, class list. This interpretation would necessarily lead to the exclusion of 813 otherwise valid class members identified after March 31, 2015. Indeed, when asked by the trial court if those 813 people should be excluded, Merrill responded "no." Exclusion of otherwise valid class members would be detrimental to the class and contrary to the intent the objective manifestations of the agreement. Hearst, 154 Wn.2d at 503.

Thus, we agree with the trial court that when viewed as a whole, the settlement contemplated that the class list would be updated to ensure that it captured all claims filed by March 31, 2017. The settlement specifically incorporates Exhibit C which provides that the "class list" would be revised "as updated by Defendants" so that no claims would be artificially excluded. The trial court recognized this in its preliminary approval and directed that "the Individual Notice shall be mailed per the Stipulation of Settlement using the Class List provided to Class Counsel on March 31, 2015 or as updated by Defendants."[7] The Class List "updated by Defendants" was then used to send the class notice.

Because the trial court and parties agreed that the class list should be updated for the purpose of notice, it is only logical that it would also be updated for the purpose of determining the number of class members and for determining the total repair cost

_____

[7] (Emphasis added.)

payments in the payment formula denominator. This result is consistent with the intent and the objective manifestations of the agreement. Hearst, 154 Wn.2d at 503.

We affirm.

_Mann, J._

WE CONCUR:

_Spearman, P.C.J._

_Schindler, J._